WELCH, Judge.
In 2002 Rex Allen Beckworth was convicted of capital murder, a violation of § 13A-5-40(a)(4), Ala.Code 1975, and was sentenced to death. On direct appeal, this Court affirmed Beckworth’s conviction- and death sentence. Beckworth v. State, 946 So.2d 490 (Ala.Crim.App.2005). The Alabama Supreme Court denied certiorari review, 946 So.2d 490 (Ala.2006), as did the United States Supreme Court, 549 U.S. 1120, 127 S.Ct. 936, 166 L.Ed.2d 717 (2007). A certificate of judgment was issued on June 23, 2006. On June 22, 2007, Beckworth filed a petition pursuant to Rule 32, Ala. R.Crim. P., seeking postcon-viction relief. The case involving Beck-worth’s petition was assigned to Judge Edward Jackson, who had presided over Beckworth’s trial. On August 13, 2007, the State of Alabama filed its answer to Beckworth’s petition. On August 16, 2007, the circuit court entered an order dismissing the petition. On September 6, 2007, Beckworth filed a motion to reconsider the dismissal and a motion for leave to amend the petition. On September 24, 2007, the trial court issued an order purporting to grant Beckworth 30 days to amend the Rule 32 petition. This appeal follows.
The underlying facts in this ease are stated in this Court’s opinion on direct appeal.
“In the early morning hours of January 10, 2000, Rex Allen Beckworth and his younger half brother, James Walker, broke into the home of Bessie Lee Thweatt, an 87-year-old -widow who lived alone in the house in which she had resided for 67 years.- At the time of her death, Thweatt was 5 feet, 1 inch tall, and she weighed 112 pounds. Thweatt was beaten and shot in the head;' her house was ransacked. On-January 10, 2000, family members of Bessie Thweatt discovered that the back window of the Ford automobile she drove, which was parked in the carport by her house, and a picture window on the back of her house had been' broken. A light in Thweatt’s carport had been broken out and the exterior telephone lines to her house had been cut. One of Thweatt’s family members, Buford Fortson, stepped onto a cement block that was in front of the broken picture window and climbed into the. house to look for Thweatt. Another cement block was inside the house, near the window, and broken glass from the window was inside the house. Fortson called Thweatt’s name and looked for her, but Thweatt did not answer. The dining room had been ransacked and furniture had been tossed around, Fortson testified that the door between the dining room, and the kitchen had been kicked in; a footprint had been left, on the door. The kitchen had been ransacked, and clothing and other items were littered all over the floors throughout the house. Thweatt was found, , dead, on the floor of the kitchen. Her back was by the locked door to the carport and her head was against the kitchen counter. Buford testified that Thweatt’s face was ‘a hundred percent covered with blood’ and that her hands were also bloody. (R. 290.) The authorities were summoned, and they investigated the murder. The jury viewed photographs and a videotape of the crime scene.,
*534 “Gary Jenkins, an investigator with the Houston County Sheriffs Office, videotaped the crime scene, including the broken light in the carport, the severed telephone lines, and what law-enforcement officers believed to be blood splatter on objects near the victim’s body. Jenkins testified that he retrieved a bullet from the frame around the door that separated the dining room and the kitchen in Thweatt’s house. Another law-enforcement officer at the scene recovered a .22 caliber .shell casing on the dining-room floor of Thweatt’s house; the casing was approximately 10 to 12 feet from Thweatt’s body. The bullet and casing were sent to the forensics laboratory for testing and comparison. The door between the kitchen and dining room appeared to have been pushed in or kicked in and a footprint had been left on the door. A flashlight battery was found beneath the ear in the carport.
“Forensic testimony established that Thweatt had sustained more than seven blunt-force injuries to her face and head. The injuries resulted in substantial bleeding and bruising of the skin, indicating that Thweatt was alive when the injuries were inflicted. The injuries also resulted in multiple facial skull fractures, indicating to the forensic pathologist who conducted the autopsy ' on Thweatt’s body that a great amount of force was used to inflict the injuries. The pathologist further testified that Thweatt ‘must have been in deep pain’ as a result of the numerous injuries to ' her face and head because the skin in these areas has many nerve endings. He later acknowledged, however, that he did not know whether Thweatt was rendered unconscious by the blows to her head. He stated that the blunt-force injuries could have been caused by the muzzle or any other part of a gun. The pathologist testified that. Thweatt’s death was the result of a gunshot wound to her right eyebrow; the shot was fired at close range.. The bullet traveled from the front of her head to the back .and from the right side to the left side. The bullet also traveled on a slight downward angle from the top of Thweatt’s head; the pathologist testified that it was very unlikely that Thweatt was standing straight up when she was shot. The bullet ‘tore a hole through her brain and basically separated the two hemispheres, that is, the right and left hemisphere, and impacted upon the back of her head.’ (R. 352.) The bullet had remained in Thweatt’s skull; the pathologist removed the bullet fragments and secured them for forensic testing.
“One of Thweatt’s grandsons, Mark Peacock, a convicted felon who was incarcerated at the time of trial, testified that he knew Beckworth and that he had spoken with him as they passed time together when they both had ‘a lot of time’ on their hands, approximately three years before the trial. (R. 327, 329.) Peacock had mentioned to Beck-worth. that his grandmother had farmland around her house and a red 1977 Thunderbird automobile in her yard; Beckworth had indicated to Peacock that he was familiar with the area where Thweatt lived. Peacock also acknowledged that he informed Beckworth, ‘[M]y grandmother probably has more money than she knows what do to do with.’ (R. 331.) Testimony from Mary Kelley, Thweatt’s daughter, established that Thweatt kept cash in her house and in her vehicle. Upon- her death, Thweatt’s family learned that she had saved approximately $200,000 in cash.
i(Chris Hood, a convicted felon who was incarcerated at the time of trial, testified that he knew Beckworth and *535 had spent time with him in November and December 2000. He testified that Beckworth asked him if he could get ‘a hot gun,’ one that could not be traced to Hood or to Beckworth. (R. 482.) Beck-worth said he wanted the' gun for his wife, who • was a truck driver. • Hood testified that he told Beckworth that he would let Beckworth know if he found such a gun. Hood further testified that Beckworth told him that the best way to kill a person was execution-style. Hood said that, after he heard about the January 10, 2000, slaying of Bessie Lee Thweatt, he contacted local law-enforcement officers and told them about Beck-worth. Hood also told the officers that Beckworth had lived in Gadsden.
“Angela Lynn Foster, an inmate at the Houston County jail at the time of trial serving a sentence for writing a ‘bad check,’ testified that James Walker, Beckworth’s codefendant, was her half brother. She testified that, on January 4 or ⅛, 2000, Walker and Beckworth came to a motel in Dothan where she was employed at the time. She said that Walker was 19 or 20 years old at the time and Beckworth was 34 years old. She said that Beckworth appeared to be the leader, the one who decided what he and Walker would do. Foster testified that she later saw inside the trunk of the car Beckworth was driving; among the items she saw inside the trunk were clothing or a quilt and the barrel of a gun that she believed to be a .22 caliber rifle or shotgun sticking out. (R. 594-95.) Beckworth told her that someone had given him the gun. Foster said that Beckworth had a brother in Gadsden.
“On January 21, 2000, a farmer who was crossing a bridge approximately one and one-half miles from Thweatt’s house, saw the barrel and stock of a rifle in the water beneath the bridge. (R. 294, 454-55.) Houston County deputies arrived soon after and the farmer assisted them in removing a .22 caliber rifle from the water.
“Lt. Donald Valenzá' of the Houston County Sheriffs' Office ‘testified as to evidence he observed at the crime scene. He also testified that James Walker was arrested in Gadsden and that Walker made some statements after his arrest. Beckworth was later arrested in Phoenix, Arizona. Lt. Valenza and another officer traveled to Arizona to arrest Beckworth on capital-murder charges. While they were in the Phoenix airport, Valenza told Beckworth that Walker was in custody .and that Beckworth and Walker would not be tried at the same time., Beckworth then told Valenza he wanted to give a statement.
“Lt. Valenza said that he had read Beckworth the rights provided in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), when he arrested Beckworth, and that he read the rights to him again before he made the statement. Beckworth gave one statement, which Valenza recorded on a pocket recorder,- and Beckworth- then made a second statement immediately after completing the first one. The tape-recorded statements were played for the jury.
“In the first • statement, Beckworth stated that, in late December 1999, he and Walker broke into a house and stole a .22 caliber rifle. In the second statement he gave at the airport, Beckworth described the crimes committed against Bessie Thweatt. Beckworth claimed that- he and Walker were looking for items to steal so that they could sell them to get money. He said that he thought about this woman living out in the country but that they had no intent to harm her. He said that Thweatt’s *536 • house had -no lights on inside when, he and Walker located the residence. Both of them had flashlights, he. said.. Beck-worth said that they looked through the windows but did not see anyone. Beck-worth told Walker, that he thought he heard someone inside; Beckworth said that he wanted to leave. He said that Walker cut the telephone lines and broke the light, in the carport. They threw a concrete block through the window and Walker .climbed into the house while carrying the .22 rifle. Beckworth said that he remained outside initially, and he heard Walker fire a shot. Beck-worth looked inside but did not see Thweatt; hé, too, climbed through the window into the hóuse. Beckworth stated that he told Walker to take Thweatt’s purse so they could leave'. Thweatt' had no money in her purse. Beckworth said that Walker kicked in the door to the kitchen and repeatedly hit Thweatt on the head with the rifle. After the third or fourth blow, Thweatt fell-. Beckworth said that he again told Walker that they should leave the house. When Walker hit Thweatt again, Beckworth said, the gun went off 'arid the -bullet struck Thweatt. , Beckworth said the rifle then broke apart: He said that they did-not - steal anything from Thweatfls house. -
“Beckworth - said' that they threw the butt of- the rifle in the woods behind Thweatt’s house and threw the rest of the rifle into a creek near, Thweatt’s house. They went to Gadsden and hid in the area for a day or two. Walker did not want -to leave Alabama, so Beck-.worth; left the State.without him. ..Beck-worth concluded by stating that he was sorry and that he could not bring ‘this lady’s life back.’
“Joe Saloom, a forensic scientist specializing in firearms ;and toolmarks. examinations, testified that the shell casing ■recovered . from Thweatt’s house had been fired-from the rifle that was recovered in the creek near her home. He examined the bullet- recovered from Thweatt’s head and the bullet-recovered from the door frame in her house, but found them to be:too damaged to determine whether they had been fired from the rifle. Saloom .testified that it was highly unlikely that the rifle would fire if it were struck- against a person’s’ head. He stated'that if the butt-of the rifle had been used to strike a person’s forehead, the strike could-cause the butt of the rifle to break away from the rest of the gun; = - , .
“The State rested’its case áfter presenting the foregoing evidence. The defense moved for a directed verdict; the trial'court denied that motion. The defense then rested without presenting any evidence. The jury returned a verdict finding Beckworth guilty of capital murder as charged in the indictment.’ A séntencing hearing was held before the jury.
“At the .sentencing hearing, the State presented evidence showing:that Beck-worth-was. on-parole-when the murder was committed. Beckworth presented -the testimony, .of Dr. Michael D’Errico, a forensic!. psychological consultant, who performed various evaluations of Beck-worth. , Dr. D’Errico testified that his initial evaluation, .revealed that Beck-worth was competent to stand trial. He testified that Beckworth obtained a full scale score of 71 on- the Wechsler Adult Intelligence Scale,. Third Edition, and that his true intelligence quotient. (IQ) would -be in a range from 66 to 76 because the test had a ‘confidence limit’ of plus or ;minus 5. points. (R...796.) An IQ score of less than 70 indicates mental retardation, Dr. D’Errico. stated.. He further testified . that, - because Beck-worth’s actual IQ might have been below *537 70, he requested a colleague to administer the Stanford-Binet Intelligence Scale, Fourth Edition, to Beckworth. Beckworth achieved a composite score of 67 on the Stanford-Binet; applying the 3-point confidence limit associated with this test, Dr. D’Errico determined that Beckworth’s IQ score would be in the range between 64 and 70. (R. 799.) Dr. D’Errico administered the Wide Range Achievement Test and determined that Beckworth’s reading skills were at an eighth-grade level and that his spelling skills and his arithmetic skills were at a fifth-grade level. Dr. D’Errico testified that, along with Beckworth’s ex-wife, he completed the Adaptive Behavior Scale, a questionnaire requiring information from someone who knows 'the individual well and who has observed him or her for an extended period. The' resülts of that test indicated that Beckworth scored comparably to individuals who were mentally retarded.
“Dr. D’Errico testified that the determination of mental retardation involves three main criteria. First, the individual must have an IQ score of 70 or below, he said. Second, the individual must have deficits in adaptive functioning in several areas, such as independent living skills and academic skills. Third, the subaverage IQ score and the deficits in adaptive functioning-must have been observable before the individual was. 18 years old. He stated that, based on. all of the tests he administered, he concluded that Beckworth met the criteria-for ■mild mental retardation.
“On cross-examination, the prosecutor questioned Dr. D’Errico’s credibility .by eliciting testimony regarding a previous capital case involving a different defendant in which Dr. D’Errico had found the defendant incompetent to stand trial, while two other experts had determined that he was competent to stand trial and that he had been malingering. Dr. D’Errico acknowledged that the Minnesota Multiphasic Personality Inventory OMMPP),. which he administered to Beckworth, requires at least a ■ sixth-grade reading level. Dr. D’Errico stated that one of the scores on the test indicated either that Beckworth attempted to appear more psychologically, .ill than he actually was or that he had trouble understanding some of the ques- • tions. (R. 827.)
“Also on cross-examination Dr. D’Er-rico acknowledged that a scoring error had been made on the Wechsler' test, that the raw score on one of the subtests should have been higher, and the correct score might have yielded an IQ score one point higher than he had reported.
“Dr. D’Errico stated that it was not inconsistent that an individual with a diagnosis of mild mental retardation would acquire a job and a driver’s license, as Beckworth did. He stated that it was also possible for a person diagnosed with mild mental retardation to engage in falsifying documents on the job so that he could obtain more money. Dr. D’Errico testified also that Beck-worth told him that had obtained a general educational development (GED) certificate, but that Beckworth’s former wife stated that he had not received a GED certificate. Dr. D’Errico testified that he was aware that Beckworth had attended a technical college, where he earned Á’s and B’s in refrigeration and electrical courses.
“During the.State’s ease at sentencing, Kurt Valley, a. former employer of Beckworth’s, testified that Beckworth had diagnosed the problems in and repaired janitorial equipment. , Beckworth obtained a commercial driver’s license (CDL) while .he was employed by Valley. Thereafter, Beckworth was promoted, *538 and he began working with customers on the road. During that time, Beck-worth had to complete documents- and submit them to the company’s office. Valley testified that Beckworth did not appear to be retarded.
“Mike Tabor testified that Beckworth had worked for him at his pest-control company as a termite technician in 1992 and 1993. Beckworth’s responsibilities involved gaining knowledge of insects and toxic chemicals and mixing chemicals safely[1] to treat customers’ homes. Tabor stated that Beckworth operated one of the company’s trucks and that he did not appear, to be retarded.
“Dr. Doug McKeown, a clinical and forensic psychologist, testified that he had performed a court-ordered psychological evaluation of Beckworth. He had reviewed the documents from the criminal investigation, the tests that Dr. D’Errico had administered to Beck-worth, and the psychological reports that had been completed, and he spoke with Beckworth. Dr. McKeown testified that Beckworth was not mentally retarded. He testified that, in light of Beck-worth’s employment history,' his education at the technical college, and his ability to secure a bank account, a GED, and a commercial driver’s license, he determined that Beckworth was not retarded. Beckworth functioned at least within the borderline range of intelligence. (R. 873.)
“Dr. McKeown stated that the Stanford-Binet test, the second intelligence test one of Dr. D’Errico’s assistants had administered to Beckworth, was not as good as the Wechsler test in measuring a person’s overall ability because the Stanford-Binét test had a tendency to suppress the scores of people with less educational experience and weaker verbal skills. Dr. McKeown testified that a scoring error had been made on one of the subtests of the Wechsler test, and that the error elevated Beckworth’s IQ score by ‘a couple of points.’ (R. 862.) The corrected score on the Wechsler IQ test was 73. (R. 884.)
“On rebuttal, the defense presented the testimony of Carol Gobbel, Beck-worth’s former wife. She testified that she had been married to Beckworth for four years, and she described him as ‘very caring, very attentive.’ (R. 897.) Gobbel testified that she and Beckworth had a daughter and that Beckworth was a loving father who helped take care of his child. Gobbel said that she and Beckworth attempted to adopt two of his young, nephews so they would not have to live .in foster care. Even after Gobbel and Beckworth divorced and Gobbel remarried, she saw Beckworth nearly every day because he continued to visit their daughter. Gobbel testified as to Beckworth’s work history, his education at the technical college, and his life skills, including his ability to read and write and to distinguish between right and wrong.”
Beckworth v. State, 946 So.2d at 495-600 (footnote omitted).
I.
Beckworth - argues ‘ that the ■ trial court abused its discretion when it summarily dismissed his Rule 32 petition only three days after the State'filed its answer to the petition, and -without allowing a reasonable time for him to amend the petition. Beckworth relies on Rule 32.7(b), Ala. R.Crim, P., which addresses amendments-to postconviction petitions, and he argues that- the trial court’s August 16, 2007, “ordér of dismissal ignored his request for leave to amend his Petition .... ” (Beckworth’s brief, at p. 14.) The State argues that when the trial court issued its order dismissing the petition, no motion to *539 amend the petition was pending before it; Beckworth did not file a motion to amend until September 6, 1997. Thus, the State argues, no issue regarding the amendment of the petition was preserved for this Court’s review. We agree with the State.
Rule 32.7(d), Ala. R.Crim. P., provides:
“If the court determines that the petition is not sufficiently specific, or is precluded, or fails to state a claim, or that no material issue of fact or law exists which would entitle the petitioner to relief under this rulé and that no purpose would be served by any further proceedings, the court may either dismiss the petition or grant leave to file an amended petition. Leave to amend shall be freely granted.”
However, Rule 32.7(b), Ala. R.Crim. P., provides: “Amendments to pleadings may be permitted at any stage of the proceedings prior to the entry of judgment.” (Emphasis added.) On September 6, 2007, after the trial court had issued the order dismissing his Rule 32 petition, Beckworth filed a combined motion to: reconsider the summary-disposition order-and'motion to amend the petition. The trial court issued an order purporting to grant 'Beckworth leave to amend the petition. ' Because Beckworth’s request to amend the petition was filed' after the petition had already been dismissed, the trial court had no authority under Rule 32.7, Ala. R.Crim. P., to consider or grant a motion to amend. However, in Rule 32 proceedings, a circuit court retains jurisdiction for 30 days after its judgment is entered. See Loggins v. State, 910 So.2d 146 (Ala.Crim.App.2005). The trial court’s order purporting to set aside the judgment of dismissal and to allow Beckworth to amend the petition was issued more than 30 days after the order of dismissal was entered, so the trial court no longer had jurisdiction over the case. Because Beckworth’s motion to amend the petition was untimely and because the trial court had no jurisdiction or authority under the Rules of Criminal Procedure to grant the amendment, we need not discuss either the arguments Beckworth presents regarding the new claim presented in the proposed amendment or B.eckworth’s assertion that this Court should grant him time i to “refine and develop, and thereby prove, his other claims through investigation, discovery practice, and an appropriate -number of subsequent amendments (Beckworth’s brief, at p. 18.) To the extent Beckworth argues that his original petition included a request for leave to amend the petition, we note that the portion of the petition Beckworth cites for this proposition is the prayer for relief, which states: “For all the above stated reasons and other such reasons as may be made upon amendment of this petition and a full evidentiary hearing, petitioner Mr. Rex Allen Beckworth, respectfully asks this Honorable Court to grant him the following relief_” (C. 79.) The phrase, “as may be made upon amendment of this petition,” cannot reasonably be construed as a motion to amend the petition, but was merely general language preceding Beckworth’s specific requests for postconviction, relief. That portion of the petition does not support Beckworth’s.apparent assertion that a motion to amend was pending, before the trial court and that the trial court ignored the request when it dismissed the petition.
To the extent Beckworth argues that the trial court abused its discretion when it dismissed the petition only three days af-' ter the State filed its answer, we disagree. This Court has held that the trial court may properly summarily dismiss a Rule 32 petition even before it receives from the State' a response to the petition, if the petition is, on its face, precluded or fails to state a claim. See, e.g., Davenport v. State, 987 So.2d 652, 654-55 (Ala.Crim. *540 App.2007). No error occurred as a result of the trial court’s entry of the judgment within days of its receipt of the State’s response. .
,11.
Beckworth ■ argues that the ■ trial court erred because, he says, in its order of dismissal the court failed to address all the claims he had raised in the petition. Specifically, Beckworth argues that the trial court addressed only the claims of ineffective assistance of counsel, and that it did not address the claims he raised regarding alleged violations of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and allegations of juror misconduct. The State concedes that the trial court did not address those claims; The State also argues that, although- in such- circumstances remand to the trial court is often necessary so that the trial court can address the remaining claims, remand is not necessary in this case because the Brady claims and the juror-misconduct claims are procedurally barred.
Certainly, a trial court should-address all cláims raised by a petitioner in' a po’st-conviction petition. However, because this Court has stated that it will not reverse an order denying a petition if trial court is correct for any reason, even if not for the stated reason, see, e.g,, McGahee v. State, 885 So.2d 191 (Ala.Crim.App.2003), we will examine the claims Beckworth presents on appeal to determine whether they were properly dismissed.
A. Brady claims
• Beckworth argues that the trial court’s summary- dismissal of his Rule 32 petition must be reversed because, he says, the prosecution, violated Brady v. Maryland when, it .failed to disclose several items-of exculpatory evidence. Specifically, Beck-worth argues that the prosecutor failed to reveal the following: that James Walker, Beckworth’s codefendant,, had made a statement to Walker’s cell mate, Timothy Byrd, in which he admitted firing the fatal shot and committing the murder; items of physical evidence; and plea bargains with some of the State’s witnesses.
1. Codefendant’s statement
Beckworth alleged in the petition that his .codefendant, Walker, told cell mate Tim Byrd “around June of 2000’’ .that Walker had “pulled the trigger,” and that “Byrd made a statement to Investigator Eric Sewell in June 2000 after this conversation.” (C, 71.) This claim was not sufficiently pleaded, and it was procedurally barred because it could have been raised at trial and on appeal but was not. See Rule 32.3, Ala. R.Crim. P.; Rule 32.2(a)(3), (a)(5), Ala. R.Crim. P..
Rule 32.3 states that “[t]he petitioner shall haye the, .burden of pleading,,and proving by . a preponderance of the evidence-,the facts .necessary to entitle.the petitioner to relief.” . Rule 32.6(b) states that, “[t]he petition;must contain a clear and specific statement of the grounds upon which relief is sought, including full disclosure of the factual basis of those grounds, A bare allegation that, a constitutional right has been violated, and mere conclusions of law shall not,be sufficient to warrant any further proceedings.” In Boyd v. State, 913 So.2d 1113, 1125 (Ala.Crim.App. 2003), this Court stated:
. “ ‘Rule 32.6(b) requires that the petition itself disclose the facts relied upon in seeking relief.’ Boyd v. State, 746 So.2d 364, 406 (Ala.Crim.App.1999). In other words, it is not the pleading of a conclusipn ‘which, if true,entitle[s] the petitioner to relief.’ Lancaster v. State, 638 So.2d. 1370, 1373 (Ala.Crim.App.1993). It is the allegation of facts in pleading which,, if true, entitle a petition *541 er to relief. After facts are pleaded, which, if true, entitle the petitioner to relief, the petitioner is then entitled to an opportunity, as provided in Rule 32.9, Ala.R.Crim.P., to present evidence proving those alleged facts.”
In Hyde v. State, 950 So.2d 344 (Ala.Crim.App.2006), this Court recognized:
“The burden of pleading under Rule 32.3 and Rule 32.6(b) is a heavy one. Conclusions unsupported by specific facts will not satisfy the requirements of Rule 32.3 and Rule 32.6(b). Th6'full factual basis for the claim must be included in the petition itself. If, assuming every factual allegation in a Rule 32 petition to be true, a court cannot determine whether the petitioner is entitled to relief, the petitioner has not satisfied the burden of pleading under Rule 32.3 and Rule 32.6(b). See Bracknell v. State, 883 So.2d 724 (Ala.Crim.App.2003)
Hyde v. State, 950 So.2d at 356.
Beckworth failed to include in his petition any facts indicating when he learned of Walker’s alleged statement to Byrd, or indicating that he did not learn about the statement in time to raise the issue in a posttrial .motion or on , appeal. Thus, he has failed to plead sufficient facts to sup-' port his claim for relief, and the claim is procedurally barred because it could have been, but was not, raised at trial or on appeal.
In Hunt v. State, 940 So.2d 1041, 1058 (Ala.Crim.App.2005), this Court considered the petitioner’s claim that the prosecutor had committed a Brady violation, and it held:
“[T]he circuit court found that Hunt’s Brady claim was precluded because Hunt failed to plead or to prove that this claim was based on newly discovered evidence. The circuit court’s ruling is consistent with prior holdings of this Court. As we stated in Williams v. State, 782 So.2d 811, 818 (Ala.Crim.App. 2000):
“ ‘The appellant’s first argument is that the 'State withheld exculpatory information in violation of Brady v. Maryland, 373 U.S. 83 (1963) ..:. The appellant' did not assert that this claim was based on newly discovered evidence. Therefore, it is procedurally barred because he could have raised it at trial and on direct ‘appeal, but did not. See Rule 32.2(a)(3) and (a)(5), Ala.R.Crim.P.; Boyd v. State, 746 So.2d 364 (Ala.Cr.App.1999); Matthews v. State, 654 So.2d 66 (Ala.Cr.App.1994); Lundy v. State, 568 So.2d 399 (Ala.Cr.App.1990).”
See also Smith v. State, 71 So.3d 12 (Ala.Crim.App.2008)- (“The appellant did not assert that this [Brady ] claim was based on newly , discovered evidence. .Therefore,-it is procedurally. barred because he - could have raised it at trial and on direct- appeal, but did not.”); Madison v. State, 999 So.2d 561 (Ala.Crim.App.2006) (a postconviction Brady claim raised in á Rule 32 petition must meet the prerequisites of newly discovered evidence set forth in Rule 32.1(e), Ala. R.Crim. P.). Because Beckworth did -not allege any facts in his Rule 32 petition indicating when he learned of the existence of Walker’s alleged statement or allege facts in his petition indicating that the discovery of the statement .did not occur until after the time for filing a motion for a new trial or an appeal had lapsed, the claim was insufficiently pleaded, and it was procedurally barred. Dismissal of the Brady claim would, have been proper on those grounds, and any error in the trial court’s failure, to address it specifically was harmless. See Coral v. State, 900 So.2d 1274 (Ala.Crim.App.2004), rev’d on other grounds, Ex parte Jenkins, 972 So.2d 159 (Ala.2005).
*542 2. Exculpatory evidence
Beckworth alleged in his petition that “[i]dentifiable physical evidence linked to someone other than Mr. Beckworth would have been material and exculpatory, given his consistent claim that he was not present when the crime was committed.” (C. 74.) This claim was not sufficiently pleaded, and it was procedurally barred from review. Beckworth did not plead any facts in the petition to support this claim. He did not allege the existence of any physical evidence linking the murder to someone else, only that if such evidence had existed, it would have been material. Because he failed to plead any facts regarding the existence of any exculpatory physical evidence, he necessarily failed to plead any facts indicating that the evidence was known to the prosecution and not revealed to him in time for this claim to have been raised at trial or on appeal. Because Beckworth failed to plead any facts .supporting this claim, it was not sufficiently pleaded and was due to be dismissed because it was procedurally barred. Rule 32.6(b), Ala. R.Crim. P.; Rule 32.2(a)(3) and (5), Ala. R.Crim. P.
3. Plea bargains
Beckworth alleged in his petition: “The prosecution failed to reveal' that breaking and entering charges against Angie Russell and her mother Patricia Walker were dropped in return for Angie Walker’s testimony.” (C. 75.) This claim was due to be dismissed because it failed to include the full factual basis- for the claim. The claim was also due to be dismissed because it was procedurally barred; the claim could have been, but was not, raised at trial and on appeal. In the petition, Beckworth failed to include any facts indicating the substance of Angie Walker’s testimony at his trial; he did not plead any facts indicating who Angie Russell and Patricia Walker were and why charges against them might have been dropped in exchange- for Angie Walker’s testimony; he did not plead any facts indicating that evidence of the alleged plea bargains was relevant or material to any issue at Beck-worth’s trial; and Beckworth failed to plead any facts indicating when he discovered that the State had made plea bargains with the witnesses or that he did not discover them in time to file a motion for a new trial or to -raise the issue on appeal. Thus, the claim was not sufficiently pleaded and it was-procedurally barred from review. Rule 32.3, Rule 32.6(b), Ala. R.Crim. P. .
Finally, the alleged plea bargains would have constituted only impeachment evidence, and relief on "a Brady claim is not allowed when the facts amount to only impeachment evidence. Johnson v. State, [Ms. CR-05-1805, Sept. 28, 2007] — So.3d - (Ala.Crim.App.2007). Therefore, even if Beckworth had provided a sufficient factual basis for the claim and even if he had alleged that he did not discover the evidence until after the time for filing a motion for a new trial and an appeal had lapsed, the claim would nonetheless have failed to state a material issue of fact or law that would have entitled Beckworth to relief. Dismissal would have been proper for this additional reason. Rule 32.7(d), Ala. R.Crim. P. Therefore, the trial court’s failure to address this claim specifically did not result in reversible error.

Conclusion

None of Beckworth’s Brady claims were pleaded with sufficient specificity, and each lacked a full disclosure of the factual basis supporting the claim. Summary dismissal of each of the claims would have been proper, additionally, because each claim could have been raised at trial or on ap *543 peal, but was not, and thus was procedurally barred, Finally, dismissal of the claim that alleged that the State had failed to disclose plea agreements would have been proper because the alleged plea agreements would have constituted only impeachment evidence, and the claim presented no material issue of fact or law that would have entitled Beckworth to relief.
B. Juror-misconduct Claims
Beckworth argues that one juror failed to answer several voir dire questions truthfully and that another juror relied on extraneous evidence in determining Beck-worth’s sentence and that, therefore, he is entitled to a new trial because he was denied the rights to due process and to a fair and impartial jury. The State argues that the juror-misconduct claims were precluded because, it says, they could have been raised at trial or on appeal and were not; therefore, the State contends, even though the trial court did not address the claims when it dismissed the petition, this Court need not remand the cause for the trial court to state its reasons for dismissal.
1. Juror A.L.
Beckworth argues in his brief, and he alleged in his petition, that juror A.L. failed to disclose that he knew a State’s witiiess, Buford ' Fortson,- even though A.L. had a conversation with Fort-son during á break in voir dire proceedings (paragraph 243 of the petition); that A.L. failed to disclose that he had previously been employed by the Federal Bureau of Investigation (paragraph 245 of the petition); that A.L. failed to disclose that he had read and seen news reports of the murder before trial (paragraph 247 of the petition); and that A.L. failed to disclose that he knew another State’s witness, “either Hood," Peacock, or Stanton”- (paragraph 244 of the petition).! Beckworth alleged in his petition that A.L.’s failure to respond truthfully to questions propounded during voir dire proceedings prevented him from fully questioning A.L. and denied him the right to exercise a peremptory strike.
The claim contained in paragraph 244, that A.L. knew “another State’s witness,” was not sufficiently pleaded and was due to be summarily dismissed. Beckworth failed to identify which witness A.L.' allegedly knew, and he failed to disclose the substance of that witness’s testimony. Because the petition failed to include the full factual basis for this portion of the claim, Beckworth failed to satisfy his burden of pleading under Rule 32.2 and Rule 32.6(b), Ala. R.Crim. P. Hyde v. State, 950 So.2d at 356.
The -State contends- that the remaining allegations regarding A.L. were procedurally -barred because Beckworth did not plead facts -sufficient to -establish that the allegations were not and could not have been discovered before trial or in time to raise the issue in a motion for a new trial or on appeal. In Ex parte Burgess, 19 So.3d 175, 179 (Ala.2008), the Alabama Supreme Court considered whether Burgess’s claims that several jurors failed to answer accurately questions posed during voir dire examination were procedurally barred because the claims could have been, but were not, raised at trial or on appeal. The Alabama Supreme Court first *544 noted that it had previously held in Ex parte Pierce, 851 So.2d 606 (Ala.2000), that such claims are not to be considered as claims of newly discovered evidence under Rule 32.1(e), Ala. R.Crim. P.:
“[The Alabama Supreme ‘Court also] -held that a claim of juror misconduct shall be treated as a ‘constitutional violation that would require a new trial’ under- Rule 32.1(a). Ex parte Pierce, 851 So.2d at 612. ‘To be entitled to that relief, however, [the petitioner] must avoid the preclusive effect of Rule '32.2(a)(3) and (5); those provisions bar a defendant from presenting in a Rule 32 postconviction petition a claim that could have been raised at trial or on direct appeal.’ Ex parte Pierce, 851 So.2d at 612.”
Ex parte Burgess, 19 So.3d at 179-180.
The Court further explained:
“In Ex parte Pierce, this Court held that ‘[b]ased on the Court of Criminal Appeals’ opinion in [State v.] Freeman, [605 So.2d 1258 (Ala.Crim.App.1992)], Pierce’s claim [of juror misconduct] was cognizable [ima Rule 32 petition] as long as he established that the information was. not known, and could not reasonably have been discovered, at trial or in time to raise the issue in a motion for new trial or on appeal.’ 851.So.2d at 616. This Court remanded the- case ‘for the. Court of Criminal Appeals to remand to the trial court for an evidentia-ry hearing on the question whether Pierce’s claim could have been raised at trial or on appeal and is thus barred pursuant to Rule 32.2(a)(3) and (a)(5).’ 851 So.2d at 617. On remand, the -trial court found that Pierce’s- cotinsel knew or should have known about the juror misconduct during the trial. ■ 851 - So.2d ‘ at 620. On’return to remand, this Court then held that Pierce’s juror-misconduct claim was procedurally barred by Rule 32.2(a)(3) or (a)(5) because the claim could have been raised at trial or on appeal. 851 So.2d at 620.”
Ex parte Burgess, 19 So.3d at 180.
Beckworth does not allege in his petition when he discovered that A.L. had allegedly failed to answer voir dire questions honestly. Whether Beckworth discovered the evidence or reasonably could have discovered it in time to raise the issue in a motion for a new trial or on appeal will determine whether the claim is procedurally barred. As the Alabama Supreme Court recognized in Ex parte Burgess:
“Burgess .reasonably expected that potential jurors answered accurately the questions posed to them during the voir dire examination. It is unreasonable to hold that a defendant must uncover any and all juror misconduct in the form of inaccurate responses to voir dire examination in tipie to raise such claims in a motion for a new trial or on appeal. Requiring a defendant to raise such claims of juror misconduct during the interval between the voir dire examination and the filing of posttrial motions places an impracticable burden on defendants. In this case, there is no evidence before us indicating that Burgess suspected or should have suspected that any jurors did not accurately answer a question during the voir dire examination.. Burgess particularly did not have any reason to suspect that a juror allegedly had a, personal relationship with the district attorney because before trial his counsel had moved for the district attorney to disclose any relationships he had with potential jurors., ,
“The trial court, in finding that Burgess’s claims were procedurally barred by Rule 32.2(a)(3) and (a)(5), found ‘that the information obtained from the jurors was-available to newly appointed appellate counsel and could have , been raised *545 in [Burgess’s] Motion for New Trial. All counsel had to do was to interview the jurors in post-trial interviews just as was done by petitioner’s counsel herein.’ However, it-, is unreasonable to require that a defendant, unaware of any failure to answer correctly questions .posed during the voir dire examination, must contact each juror and ask whether he or she accurately and truthfully answered such questions. Jury service is sufficiently disruptive of a citizen’s regular activities without this Court announcing a rule that would routinely subject jurors to potentially insulting postverdict interrogation concerning their veracity. Absent any evidence that a telephone call to some or all the jurors would have been nothing more than a mere fishing expedition, we cannot hold on this record that Burgess’s claims are precluded.”
Ex parte Burgess, 19 So.3d at 188.
Based on established easelaw, we cannot hold that the allegations against juror A'.L. that Beckworth raised in paragraphs 243, 245, .and 247 of the petition were proeedurally barred and subject to dismissal on that ground.
Because a claim of juror misconduct is properly raised in a Rule 32 proceeding when a petitioner establishes that evidence of the alleged misconduct was not known to the petitioner át trial, and could not reasonably have been discovered by the petitioner at trial or in time to raise the issue in a motion for a new trial or on, appeal, we are compelled to remand this case to the trial court for- additional proceedings on those claims of juror misconduct related to juror A.L. that were pleaded with sufficient specificity. The trial court must determine, first, .whether Beck-worth . can establish that. his claims for relief are not barred by the preclusive effects of Rule 32.2(a)(3) and (5). Second, if the claims are not procedurally barred, the trial - court shall provide Beckworth with the opportunity to prove the allegations contained in paragraphs 243, 245, and 247, and to establish that he is entitled to relief: We note that the standard for determining'whether juror'misconduct warrants a new trial is whether the misconduct might have prejudiced the defendant; that determination is within the trial court’s discretion based on an evaluation of all the relevant factors, including the remoteness of the matter inquired' about, the materiality of the matter inquired about, ■the clarity of the questions asked, and the juror’s inadvertence or willfulness in failing to answer truthfully.. Ex parte Dobyne, 805 So.2d 763 (Ala.2001).
2. Juror D.B.
Beckworth alleged' in paragraph 248 of his petition that juror D.B. considered extraneous evidence during the determination of the jury’s sentencing recommendation. Specifically, Beckworth alleged:
“D.B. remembers that the defense tried to claim that Mr. Beckworth was mentally retarded. He did not think that the defendant was mentally retarded because he had gotten his Commercial Driver’s License (CDL). D.B. knows that the test to receive-a CDL is very difficult because his wife is a bus driver and has her CDL. She told him that the test was difficult and complicated. Because of what, he knew about the CDL .test from his wife, D.B. did not believe that Mr. Beckworth could be mentally retarded.”
(C. 78-79.)
This claim was due to be summarily dismissed because it presented no material issue of fact or law that would have entitled Beckworth to relief. Rule 32.7(d), Ala. R.Crim. P. The trial court determined, *546 based on the evidence presented'at trial, that Beckworth was not mentally retarded. ■D.B.’s opinion. about whether Beckworth was mentally retarded and his alleged consideration of extraneous information in making that determination were irrelevant. Although the trial court submitted a special interrogatory to the .jury at the sentencing phase of Beekworth’s trial and the jury indicated that it believed that Beck-worth was not mentally retarded, this Court noted in its opinion on direct appeal “that nothing in Alabama or federal law require[d] that this procedure be followed _” Beckworth v. State, 946 So.2d at 509 n. 6. Because Beckworth’s claim as to D.B. failed to raise a material issue of fact or law that would have entitled him to relief, the claim was due to be dismissed. The trial court’s failure to address the claim in its order resulted in no -reversible error.

Conclusion

For the reasons set froth in Part II.B.l., Beckworth may be entitled to an opportunity to present evidence to prove the claims of juror misconduct related to juror A.L. that he alleged in paragraphs 243, 245, and 247 of his petition. Therefore, we must remand this case for the circuit court to conduct further proceedings. His claims of juror misconduct relative to juror D.B. were properly-dismissed.
III.
Beckworth argues that' the trial court erred when it summarily dismissed the ineffective-assistance-of-counsel claims raised in the petition. He argues that the petition included a sufficient factual basis for each claim, and that he was therefore entitled to discovery and to an evidentiary hearing so that he had the opportunity to prove the allegations.
The trial court’s order of dismissal stated, in relevant part:
“The Court well remembers the trial in this case and- has reviewed the petition and. the response thereto.
“The Court finds that the allegations in the Petition are of a- conclusionary [sic] and speculative nature and do not give rise to the charge of ineffective assistance of counsel. Although, in retrospect, various different or additional investigation and trial measures might •have been employed, the Court finds that none of the allegations raised in the ■Petition give rise to the lack of trial conduct that would have made any difference in Mr. Beckworth’s trial or its results. ■ •
• “There does not appear to be any specific matters raised or any combination thereof which would have materially affected the result of the trial ih light of the overwhelming evidence presented. Much of the substance of the allegations •raised were reviewed on appeal on their merits even though not couched in terms .of ineffective assistance of counsel. Although the Defendant’s petition raises different ■ trial strategies and suggests better focusing on other issues after the opportunity to review the transcript after the case was actually tried, such does not constitute ineffectiveness of prior counsel and therefore fails to state a claim as to which relief can be granted.
“Therefore, the court dismisses the Petition for Post Judgment Relief.”
(C. 157-58.)
The trial court thus determined that the claims of ineffective assistance of counsel were not sufficiently pleaded and, therefore, that they failed to state a claim for relief. The court also determined that none of the claims supported a finding of ineffective assistance of counsel because none of the actions Beckworth alleged-trial counsel- should have taken would have changed the outcome of the-trial. Because *547 the trial court did not hold a hearing, it was not required to make specific findings of fact as to each claim of ineffective assistance of counsel. Rule 32.9(d), Ala. R.Crim. P.
Our review of the trial court’s judgment is governed by the following principles.
“ ‘[W]hen the facts are undisputed and an appellate court is presented with pure questions of law, that court’s review in a Rule 32 proceeding is de novo.’ Ex parte White, 792 So.2d 1097, 1098 (Ala.2001). ‘However, where there are disputed facts in a postconviction proceeding and the circuit court resolves those disputed facts, “[t]he standard of review on appeal ... is whether the trial judge abused his discretion when he denied the petition.” ’ Boyd v. State, 913 So.2d 1113, 1122 (Ala.Crim.App.2003), quoting Elliott v. State, 601 So.2d 1118, 1119 (Ala.Crim.App.1992). ‘“[I]f the circuit court is correct for any reason, even though it may not be the stated reason, we will not reverse its denial of the petition.’” Scroggins v. State, 827 So.2d 878, 880 (Ala.Crim.App.2001), quoting Reed v. State, 748 So.2d 231, 233 (Ala.Crim.App.1999). Moreover, ‘[w]e will not review issues not listed and argued in brief.’ Brownlee v. State, 666 So.2d 91, 93 (Ala.Crim.App.1995). Therefore, those claims that Hyde presented in his petition but does not pursue on appeal are deemed to be abandoned and will not be considered by this Court.”
Hyde v. State, 950 So.2d at 349.
The pleading requirements for a post-conviction petition are well established.
“Rule 32.3, Ala. R.Crim. P., provides, in pertinent part, that ‘[t]he petitioner shall have the burden of pleading and proving by a preponderance of the evidence the facts necessary to entitle the petitioner to relief.’ See, e.g., Fortenberry v. State, 659 So.2d 194, 197 (Ala.Crim.App.1994). Pursuant to Rule 32.6(b), Ala. R.Crim. P.:
“ ‘The petition must contain a clear and specific statemént ofithe grounds upon which relief is sought, including full disclosure of the factual basis of those grounds. A bare allegation that .a constitutional right has been violated and mere conclusions of law shall not be sufficient to warrant any further proceedings.’ - .
“See, e.g., Wilson v. State, 650 So.2d 587, 590 (Ala.Crim.App.1994).
“As this court has previously noted:'
“‘“An evidentiary hearing on a [Rule 32] petition is required only if the petition is ‘meritorious on its face.’ Ex parte Boatwright, 471 So.2d 1257 (Ala.1985). A petition is ‘meritorious on its face’ only if it contains a clear and specific statement of the grounds. upon which relief is sought, including full disclosure of the facts relied upon (as opposed to a general statement concerning the nature and effect of those facts) sufficient to show that the petitioner is entitled to relief if those facts are true. Ex parte Boatwright, supra; Ex parte Clisby, 501 So.2d 483 (Ala.1986).”*
"‘Moore v. State, 502 So.2d 819, 820 (Ala.1986).’
“Bracknell v. State, 883 So.2d 724, 727-28 (Ala.Crim.App.2003).
“ ‘Rule 32.6(b) requires that the petition itself disclose the facts relied upon in seeking relief.’ Boyd v. State, 746 So.2d 364, 406 (Ala.Crim.App.1999). In other words, it is not the pleading of a conclusion ‘which, if true, entitle[s] the petitioner to relief.’ Lancaster v. State, 638 So.2d 1370, 1373 (Ala.Crim.App. *548 1993). It. is the allegation of facts 'in pleading which, if true, entitle a petitioner to relief. After facts are pleaded, which, if true, entitle the petitioner to relief, the petitioner is then entitled to an opportunity, as provided in Rule 32.9, Ala.R.Crim.P., to present evidence proving those alleged facts.”
Boyd v. State, 913 So.2d at 1125.
In Hyde v. State, this.-Court further explained: -•
“The burden of pleading under Rule 32.3 and Rule 32.6(b) is a heavy one. Conclusions unsupported by specific facts will not satisfy the requirements of Rule 32.3, and Rule 32.6(b). The full factual basis for the claim must be included in the petition itself. ' If, assuming every factual allegation in a Rule 32 petition to-be ' true, a court cannot determine whether the petitioner is entitled to relief, the petitioner has not satisfied the burden of pleading under Rule 32.3 and Rule 32.6(b). See Bracknell v. State, 883 So.2d 724 (Ala.Crim.App.2003). To sufficiently plead an allegation of ineffective assistance of counsel, a Rule 32 petitioner hot only must ‘identify the [specific] acts or' omissions of counsel that áre alleged not to have been the result of reasonable professional judgment,’ Strickland v. Washington, 466 U.S. 668, 690 (1984), but also must plead specific facts indicating that he or she was prejudiced by the acts or omissions, i.e., facts indicating ‘that there is a reasonable probability that, but for. counsel’s unprofessional errors, the result of the proceeding would have been-different.’ 466 U.S.-.at 694. A bare allegation that prejudice occurred without specific facts, indicating how the petitioner was prejudiced is not sufficient.”
Hyde v. State, 950 So.2d at 355-56.
Alabama appellate courts have often discussed the requirements for pleading and proving claims of ineffective assistance of counsel. For example, in Dobyne v. State, 805 So.2d 733, 742-44 (Ala.Crim.App. 2000), this Court stated:
“‘In order to prevail on a claim of ineffective assistance of counsel* a defendant must meet the two-pronged test articulated by the United States Supreme Court in Strickland v, Washington, 466 U.S. 668 (1984):
“ ‘ “First, the defendant must show that counsel’s performance was deficient. This requires showing that counsel made errors so serious that counsel .was not functioning - as the ‘counsel’ guaranteed the defendant by the Sixth Amendment. Second, the defendant ■ must show that the deficient performance prejudiced -the defense. This requires showing that counsel’s errors were so serious as to deprive the defendant of a fair trial, a trial whose .result is reliable. Unless a defendant makes both showings,- it cannot be said that the conviction or ■ death sentence resulted from a breakdown in the adversary process that renders the result unreliable.”
“ ‘466 U.S. at 687.
““‘The performance component outlined in Strickland is an objective one: that is, whether counsel’s assistance, judged under ‘prevailing professional norms,’ was ‘reasonable considering all the-circumstances.’” Daniels v. State, 650 So.2d 544, 552 (Ala.Cr.App.1994), quoting- Strickland, 466 U.S. at 688. “A court deciding an actual ineffectiveness claim must judge the reasonableness of counsel’s challenged conduct on the facts of the particular case, viewed as .of the time of counsel’s conduct.” Strickland, 466 U.S. at 690.
“ .‘The claimant alleging ineffective .assistance of counsel has the burden of showing that counsel’s assistance was *549 ineffective. Ex parte Baldwin, 456 So.2d 129 (Ala.1984), aff'd, 472 U.S. 372, 105 S.Ct. 2727, 86 L.Ed.2d 300 (1985). “Once a petitioner has identified the specific acts or omissions that he alleges were not the result of reasonable professional judgment on counsel’s part, the court must determine whether those acts or omissions fall ‘outside the wide range of professionally competent assistance.’ [Strickland,] 466 U.S. at 690.” Daniels, 650 So.2d at 552. When reviewing a claim of ineffective assistance of counsel, this court indulges a strong presumption that counsel’s conduct was appropriate and reasonable. Hallford v. State, 629 So.2d 6 (Ala.Cr.App.1992); Luke v. State, 484 So.2d 531 (Ala.Cr.App.1985). “This court must avoid using ‘hindsight’ to evaluate the performance of counsel, We must evaluate all the circumstances surrounding the 'case at the time of counsel’s actions before determining whether counsel rendered ineffective assistance.” Hallford, 629 So.2d at 9. See also, e.g., Cartwright v. State, 645 So.2d 326 (Ala.Cr.App.1994).
“ ‘ “Judicial scrutiny of counsel’s performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel’s assistance after conviction or adverse ■sentence, and it is all too easy' for a court, examining counsel’s defense after it has proved unsuccessful, to con-, elude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects ■ of hindsight, to reconstruct the circumstances of counsel’s challenged conduct, and to evaluate the conduct from counsel’s perspective at the time. Because-of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel’s conduct falls within the wide range of reasonable professional assistance; • that is, the- defendant must overcome the presumption that, under the circumstances, the "challenged action '‘might be considered sound trial strategy.’ ' There are countless ways to providé effective assistance in any given case. Even thé best criminal defense attorneys would not defend a particular client in the same way.”
‘“Strickland, 466 U.S. ah 689 (citations omitted). See Ex parte Lawley, 512 So.2d 1370, 1372 (Ala.1987).
“ ‘ “Even if an attorney’s performance is determined to be deficient, the petitioner is not entitled to relief unless • he establishes that ‘there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different, ¡A- reasonable probability is a probability.sufficient to undermine confidence in the outcome.’ [Strickland,] 466 U.S. at 694.”
“ ‘Daniels, 650 So.2d at 552.
1 “‘“When a defendant challenges a death sentence such as the one at issue. in this case, the question is whether there is: a-reasonable probability that; absent the errors,- the sentencer — including an appellate court, to the' extent it independently rewqighs the evidence — would have concluded that the balance of aggravating and mitigating circumstances did not warrant death.” . -
“ ‘Strickland, 466 U.S. at 697, quoted in Thompson v. State, 615 So.2d 129, 132 (Ala.Cr.App.1992).’
“Bui v. State, 717 So.2d 6, 12-13 (Ala.Cr.App.1997)."
*550 With the foregoing' principles in ■ mind, we turn to. the specific allegations raised in Beckworth’s petition.
A. Guilt-phase Issues
In part I.B. of his petition, Beckworth alleged that “counsel failed to conduct adequate investigation to present an effective defense at both phases of Mr. Beckworth’s trial.” (C. 34.)[2] Beckworth’s allegations in support of this claim can be divided into several categories. In part II of the petition, Beckworth made numerous additional allegations of ineffective assistance of counsel, some of which overlapped the allegations presented in part I.B. of the petition. In part II.A. of petition, Beckworth alleged that trial counsel’s failure to adequately investigate prevented them from formulating and presenting a “coherent theory of defense.” In part II.B. of the petition, Beckworth alleged that counsel’s investigative failures prejudiced him. In part II.C. of the petition, Beckworth alleged that counsel’s investigative deficiencies were compounded by counsel’s failure to adequately impeach and cross-examine witnesses, by their failure to object to the prosecutor’s inflammatory arguments, and by their failure to present any witnesses during the guilt phase of the trial. In part II.D. of the petition, Beckworth alleged that, individually and cumulatively, all the allegations of counsel’s deficient performance raised in the entire petition established ineffective assistance of counsel. We will address each category in turn.[3]
1. General allegations
In paragraphs 120-124 of the petition, Beckworth made a variety of general allegations: that “counsel focused prematurely and single-mindedly on the issue of mental retardation to the exclusion of all other readily available evidence and matters critical” to Beckworth’s defense; that an analysis of counsel’s billing records revealed “that trial counsel spent insufficient time” conducting their investigation in the case; that counsel did not maintain “close contact” with him; that “counsel failed to use any time to interview a single member” ■ of Beckworth’s family or “anybody who knew him” other than his ex-wife; and that counsel “failed to adequately prepare” their psychological expert “to accurately diagnose” Beck-worth or to testify. None of the foregoing general allegations of ineffective assistance of counsel were pleaded with the specificity required to satisfy Rule 32.3 and Rule 32.6(b), Ala. R.Crim. P. Beckworth was required to identify counsel’s specific acts or omissions that he alleged were not the result of counsel’s reasonable professional judgment, and he was required “ ‘to plead specific facts indicating that he was prejudiced by the acts or omissions — facts indicating that there ex *551 isted a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different.’ Strickland [v. Washington], 466 U.S. [668] at 694 [(1984)].” Hodges v. State, 147 So.3d 916, 942 (Ala.Crim.App.2007), pending on return to- second remand. Beckworth made bare allegations of deficient performance and prejudice; thus, summary dismissal of the general claims was proper.
2. Ineffective presentation of mental-retardation “defense”
Beckworth argues in his brief to this Court that trial counsel focused solely on the issue of mental retardation, to the exclusion of other “readily available issues.” (Beekworth’s brief, at p. 35.) He also argues that counsel failed to adequately investigate the criteria for diagnosing mental retardation; failed to provide his psychological-expert, Dr. Michael D’Erri-co, with adequate information so he could conduct a meaningful assessment of Beck-worth’s level of adaptive functioning; and failed to investigate the “Flynn effect,” which, Beckworth says, resulted in the admission at trial of inaccurate intelligence-test scores. Beckworth presented these claims in part I.B.1. of the petition. The claims were properly dismissed because Beckworth failed to plead sufficient facts to satisfy the requirements of Rule 32.3 and Rule 32.6(b), Ala. R.Crim. P.
a.In paragraph 125 of the petition, Beckworth alleged that trial counsel failed to investigate “other potentially viable lines of defense” and failed to discover “matters critical” to Beckworth’s defense at both phases of his trial. These allegations constitute bare conclusions. Beck-worth failed to plead any facts supporting those conclusions. “Conclusions unsupported by specific facts will not satisfy the requirements of Rule 32.3 and Rule 32.6(b). The full factual basis must be included in the petition itself.” Hyde v. State, 950 So.2d at 356. Thus, because Beckworth failed to comply with the pleading requirements, this claim was due to be dismissed. •
b. In paragraph 126 of the petition, Beckworth alleged that trial counsel “concluded prematurely that they would not need to hire independent experts to test the evidence gathered by the prosecution.” (C. 36.) This claim £ was due to be dismissed because Beckworth' presented no facts supporting the conclusion that counsel acted prematurely, he failed to allege the types of evidence that should have been examined, and -he failed to allege what kinds of experts should have been hired and what those' experts would have discovered.if they had examined any of the evidence. Thus, the claim was properly dismissed. See, e.g., McNabb v. State, 991 So.2d 313 (Ala.Crim.App.2007).
c. In paragraph 127, Beckworth alleged that trial counsel did not allow him to take notes at trial “because they wanted him to appear mentally retarded,” and they made him wear clothes' that “would make him look dumb.” (C. 36.) This claim Was due to be dismissed because it failed to state sufficient facts indicating the way in which counsel’s performance was allegedly deficient. Furthermore, this paragraph of. the -petition failed to state a claim ■ for which relief could be granted. Even if counsel had done what Beckworth alleged they did because they wanted Beckworth- to appear mentally retarded, given the fact that Beckworth continues to argue — as he argued at trial and on appeal — that he is mentally retarded, the allegations fail to state a claim. Even if counsel’s actions were intended to make Beckworth “look dumb,” this strategy would have been consistent with the strategy of establishing that Beckworth was *552 mentally retarded and would not have been unreasonable. See, e.g., Hyde v. State, supra (petitioner is required • to plead facts that, if true, entitled him to relief),- For the foregoing reasons, the claim was properly dismissed.
■ d. In paragraphs 128-136 of the petition, Beckworth alleged that trial counsel failed- to investigate the relevant criteria that were required to prove that, he was mentally retarded-, and they- focused on only one criterion, his IQ scores.[4] . Beck-worth alleged that counsel’s- “incomplete knowledge and preparation .denied Mr. Beckworth the right to effective assistance and-prejudiced him in both phases of his trial.” (C. 39.) This claim was due to be dismissed because Beckworth failed to sufficiently plead an allegation of ineffective assistance of-counsel. Beckworth did not identify any specific acts, .or -omissions of counsel, and he failed to plead any specific facts indicating how he was prejudiced by those acts or omissions. ,“A bare allegation that prejudice occurred.without specific facts indicating .how the petitioner was prejudiced is not sufficient.” Hyde v. State, 950 So.2d at 356. Because Beckworth failed to satisfy the .pleading requirements of Rule 32.3 and Rule 32.6(b), we conclude that the trial court did not err when it dismissed this claim.
■b. In paragraphs 137-147 of the petition, in a section with the heading, “Trial counsel’s singular focus-on intelligence test scores caused-them to ineffectively present a -case for mental retardation,” .Beckworth made numerous and varied allegations, in-eluding that counsel did not provide “sufficient” information to the defense’s mental-health expert before the expert conducted his evaluation; that counsel failed to speak to “family members and other people who knew Mr. Beckworth well as a child and as an adult,” so they- failed, to learn “valuable information” about him; and that counsel failed to investigate Beckworth’s family history of mental retardation and mental illness.
Beckworth failed to satisfy the pleading requirements of" Rule- 32.3' and Rule 32.6(b), and the claim was due to be dismissed. ■ First, Beckworth failed to make any specific allegations of prejudice. Beckworth was required to plead facts indicating that there existed “a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different,” Strickland v. Washington, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and he was required to plead the full factual basis for supporting this claim. Beckworth made only conclusory allegations of prejudice. This deficiency, alone, supports the trial court’s dismissal. Hyde v. State, 950 So.2d at 356.
The petition suffers from additional deficiencies, however, because Beckworth failed to identify specific acts or omissions of counsel that he alleged were not the result of counsel’s reasonable professional judgment. Beckworth made only broad allegations^ such as that counsel failed to interview “people who knew Mr. Beck-worth” and that “counsel failed to learn *553 the basic characteristics of mild mental retardation/’ but broad allegations such as these do not satisfy the requirement of specific pleading and they were insufficient to state a claim for relief. In paragraph 141 of the petition, Beckworth alleged that if the defense’s psychological expert had “known the critical information” about Beckworth’s family history, as alleged “in paragraphs 28-119”' of" the petition, the expert “would have been able to develop a complete picture of • Mr. Beckworth’s adaptive functioning deficits.”' (C. 40.-) This claim, too, was insufficiently pleaded, because it contained no specific facts about what information trial counsel and the expert allegedly failed to discover and what witnesses would have provided that information to them. Beckworth also failed to allege the • names of any witnesses who would have provided1 relevant, admissible testimony about these alleged adaptive-functioning deficits at trial. Moreover, many of the allegations in paragraphs 28-119 of the petition are unrelated to Beck-worth’s alleged adaptive-functioning deficits. For example, paragraph 104 stated:
“Mr. Beckworth had his parole changed to Gadsden from Dothan.' Jeffery Williams was Mr. Beckworth’s parole officer in Dothan from 1991 to 1997. Williams had known Mr. Beckworth much of his life and believed he was a good man. He knew Mr. Beckworth did not have so much as a speeding ticket during his time on parole.”.
(C. 30.) A majority of the allegations were conclusory and irrelevant to identifying deficits in Beckworth’s adaptive functioning. This claim, therefore, also failed to state a claim.of ineffective assistance-of .counsel.
Finally, the' record doés not support Beckworth’s allegations. During the sentencing. phase of Beckworth’s trial, Dr. D’Errico, the defense psychological expert, testified that he administered the Adaptive Behavior Scale to Beckworth’s ex-wife, who had lived with Beckworth for many years, in order-to obtain objective information about Beckworth’s abilities. Dr. D’Errieo determined that Beckworth .demonstrated a significant deficit in his adaptive functioning in-the area of self-direction. An allegation that is refuted by the record fails to state a claim and does not establish that a material issue of fact •or law exists as required by Rule 32.7(d). McNabb v. State, 991 So.2d 313 (Ala.Crim. App.2007); Duncan v. State, 925 So.2d 245 (Ala.Crim.App.2005).
For all of the foregoing reasons, the trial court correctly dismissed this claim.
f. In paragraphs 148-156 of the petition, Beckworth alleged that trial counsel “failed to effectively develop the claim that Mr. Beckworth has low intellectual functioning” and that counsel failed to investigate “the Flynn effect.” (C. 42-43.)[5] Beckworth also alleged that counsel’s failures “deprived Mr. Beckworth the right to have an accurate assessment of his intellectual functioning to be presented to the jury at trial.” (C. 44.) (Emphasis added.) *554 Beckworth also alleged that, but for-trial counsel’s inadequacies, “the jury would have reached a different verdict.” (C. 52.) (Emphasis added.) This claim was due to be-dismissed because it failed to state a claim .for relief.
Although the trial' court submitted a special interrogatory to the jury at the sentencing phase of Beckworth’s trial requesting the jury to make a finding as to Beckworth’s claim that he was mentally retarded, and the jury indicated that it believed that Beckworth was not mentally retarded, this Court noted in its opinion on direct appeal “that nothing in Alabama or federal law require[d] that this procedure be followed .... ” Beckworth v. State, 946 So.2d at 509 n. 6. According to Alabama law, the decision about Beckworth’s level of intellectual functioning was for the trial court. Therefore, Beckworth’s allegation that trial counsel’s actions prevented the jury from reaching a different result fails to raise a material issue of fact or law that would have entitled him to relief. Therefore, the claim was due to be dismissed. McNabb v. State, 991 So.2d 313 (Ala.Crim.App.2007).
We note, furthermore, that the claim was deficiently pleaded. Beckworth provided no specific facts about what information trial counsel allegedly failed to discover, and what witnesses would' have provided that information to them. Beck-worth also failed to allege the names of any witnesses' who would have provided relevant, admissible testimony about these allegations at trial. The failure to plead the full factual basis in support of a claim warrants summary dismissal of the claim. Hyde v. State, supra.
3.. Failure to adequately challenge the voluntariness of Beckworth’s statements
Beckworth argues- that the trial court erred when it dismissed the claim that trial counsel had failed to effectively communicate with him and that, as a result, they had failed to learn facts that could have been used to demonstrate that his inculpatory statement was involuntary and not credible. This claim was presented in paragraphs 157-158 of Beckworth’s petition. ,In paragraphs 188-191 of the petition,. Beckworth presented a variety of allegations regarding an inculpatory statement, including-'that the statement was extracted and coerced and that testimony from “family members” would have demonstrated Beckworth’s “vulnerability to police tactics.” (C. 55.)
This claim was properly dismissed because. Beckworth failed to plead sufficient facts to satisfy the requirements of Rule 32.3 and Rule 32.6(b). Beckworth failed to allege any facts supporting the assertion that counsel did not have “effective communication” with ' him. '' Furthermore, Beckworth failed to allege in the petition even a single fact that he now says counsel should have learned and that would have supported suppression of - his statement. He made only conclusory allegations about what counsel should have learned,, such as how his codefendant’s confession “affected” him, and how “he had often, been the fall guy for others,” (C. 55.) Beckworth actually gave two statements to law-enforcement officers, and both statements were transcribed; Beckworth, however, refers in his petition to only a single statement. Beckworth failed to allege in the petition which statement was allegedly involuntary and not credible, and would have been excluded if counsel had communicated effectively with him. This constitutes an additional deficiency in the' pleading. The bare allegations that counsel did not communicate effectively and that they failed to learn “these facts” were insufficient to warrant further proceedings and *555 provide ample support ■ for the circuit court’s summary dismissal. E.g., Hodges v. State, 147 So.3d 916, 950 (Ala.Crim.App.2007).
Moreover, we note that Beck-worth filed a pretrial motion to suppress the two inculpatory statements he had made to law-enforcement officers, and the trial court held a.hearing on the motion. At the hearing, Beckworth testified, that he was not under the influence of drugs or alcohol when he made the statements, that he had not been threatened or induced to make the statements, and that the transcripts of the.statements did.not indicate that he had asked to' speak to an attorney. The trial court denied Beckworth’s motion to suppress, and this Court upheld the ruling. Beckworth v. State, 946 So.2d at 515-17. Beckworth failed to allege any facts indicating the existence of any additional grounds that would have warranted suppression of the statements. The trial court’s dismissal of this claim is due to be affirmed.[6]
4. Failure to investigate and verify exculpatory account
Beckworth argues that the trial court erred when it dismissed the claim that trial counsel had failed to investigate and verify his account of his whereabouts at the time of the crime, which, he says, was exculpatory. Beckworth raised this allegation in paragraphs 159-161 and paragraph 192 of the petition. The trial court correctly dismissed this claim' because Beckworth failed to include in the petition a sufficient factual basis for the claim. To plead the claim sufficiently, Beckworth was required to identify the names of the witnesses he alleged should have been in-, terviewed, to plead, with specificity what admissible information those witnesses would have provided, and to allege how the result of the proceedings would have been affected by , the additional testimony. Smith v. State, 71 So.3d 12 (Ala.Crim.App.2008). Beckworth testified at the suppression hearing that no threats or promises were made to him when he gave his incul-patory statements, and that no' inducements were offered to him! ■ (Jan. 8, 2002, R. 41.)[7] Furthermore, the transcripts of the statements demonstrate that Beck-worth ' admitted his involvement in the crime with his codefendant and that he told the investigators, “I wish I could take it back man, but I can’t.” (C. 35.) Beck-worth failed to allege ¿ny specific facts that, he says, would have changed the outcome of the proceeding in light of his own admissions and the additional inculpa-tory evidence presented at trial. Therefore, Beckworth did not satisfy the requirements of Rule 32.3 and Rule 32.6(b),. Ala. R.Crim. P., and the claim was properly dismissed.
5. . Failure to hire independent experts to review : State’s forensic-evidence findings. .
Beckworth argues that the trial court erred when it dismissed his claim *556 that trial counsel’s performance was inadequate because they failed to hire independent experts to evaluate the results of forensic tests conducted by the State. Beckworth presented this‘claim in paragraphs 162 and 193-194 of the petition. The claim was due to be dismissed because it failed to satisfy the pleading requirements of Rule 32.3 and Rule 32.6(b), because it included no specific factual allegations of deficient performance or prejudice.
Beckworth presented only general allegations that counsel should have hired unspecified “independent experts” to evaluate evidence obtained at the scene (C. 47), and that “results indicating that another person was present at. the crime scene would have bolstered Mr. Beckworth’s defense” (C., 56-67.) However, Beckworth failed to present any specific facts to support these general allegations,. such as identifying the types, of experts counsel should have called, the names of any such experts who would .have testified at trial, and the- substance of -.their , testimony. Beckworth also failed to plead any specific allegations, of prejudice. He alleged only that evidence that there was another perpetrator would have bolstered his defense; he did not allege that additional witnesses would have testified that another perpetrator was, in fact, present.' Because Beckworth failed to include the full factual basis for either the allegation of deficient performance or the allegation of prejudice, the claim was insufficiently pleaded and it was due to be dismissed. E.g., Hyde v. State, 950 So.2d at 355-56.
6. Failure to hire a private investigator
Beckworth argues that the trial court erred when it dismissed his claim that trial counsel had rendered deficient performance because they failed to hire a private investigator. This claim, which was raised in paragraphs 163-164 and 195 of the petition, failed to satisfy the pleading requirements of Rule 32, and the trial court correctly dismissed the claim.
Beckworth alleged that “a private investigator could have reviewed the crime scene and the circumstances surrounding it, interviewed witnesses relevant to both phases , of trial, and uncovered evidence of undisclosed deals made by the prosecution with' State’s witnesses.” (C. 45-46.) He further alleged that if counsel had hired an investigator, “they would have been able to develop evidence supporting a viable theory of defense at the guilt/innocence phase of the trial.” (C. 57.) These bare, conclu-sory allegations were insufficient.
This Court has stated:
“To sufficiently plead an allegation. of ineffective assistance of counsel, a Rule 32 petitioner not only must ‘identify the [specific] acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment,’ Strickland v. Washington, 466 U.S., 668, 690 (1984), but-also must plead specific facts indicating that he or she was prejudiced by the.acts or omissions, i.e., facts indicating ‘that there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different.’ 466 U.S. at 694. A bare allegation that prejudice occurred without specific facts indicating how the petitioner was prejudiced is, not sufficient.”
Hyde v. State, 950 So.2d at 356.
Beckworth failed to identify any specific facts to indicate what evidence, a private investigator would have discovered; he did not identify the name of a private investigator trial counsel could have hired to investigate the- case; nor did he allege that the evidence that an investigator might have discovered would have been admissible at his trial. Furthermore, Beckworth *557 did not. allege any specific facts to indicate that the result of the trial would have been different if counsel had hired an investigator. Thus, Beckworth failed to satisfy the pleading requirements for both the deficient-performance prong and the prejudice prong of a claim of ineffective assistance of counsel. Therefore, summary dismissal of this claim was proper.
7. Failure to conduct adequate voir dire
Beckworth argues that the trial court erred when it dismissed the claim that counsel rendered ineffective assistance because they failed to. conduct “adequate voir dire” examination, and did not obtain the information that was necessary to exercise peremptory strikes or to challenge the biased jurors for cause. (Beck-worth’s brief, at p. 41-42.) Beckworth alleged in paragraphs 167-177 of his petition that counsel conducted inadequate voir dire examination and “thereby deprived Beckworth of a fair and impartial jury.” (C. 47-51.)
a.In paragraphs 167 and 171, Beck-worth made general allegations that trial counsel did.not conduct adequate voir dire and that they did not ask questions that were detailed enough to identify the veniremembers’ biases. To the extent Beckworth intended for these allegations to constitute separate claims, we hold that they failed to satisfy the pleading requirements of Rule 32.8 and Rule 32.6(b), because they contained no specific factual allegations of either deficient performance or prejudice.[8] They were, therefore, properly dismissed by the trial court, Hyde v. State, 950 So.2d 344 (Ala.Crim.App.2006) (Rule 32.6(b), Ala. R.Crim. P., requires that the petition contain a full disclosure of the factual basis for each claim). : -
b. In paragraph 172 of the petition, Beckworth alleged that trial counsel should have asked--' the veniremembers whether any of them lived with or cared for an elderly person. He alleged that such questioning would have identified veniremembers such as juror E.R., who was upset that the victim in this case was an elderly woman. (C.: 50.) Beckworth failed to satisfy the pleading requirements of Rule 32 with' regard to this claim. Beckworth did not allege that juror E.R.’s feelings rose to the level of bias that would have supported .a challenge for cause or that would have resulted in counsel’s-exercising a peremptory' strike against E.R. Nor did Beckworth allege that E.R. or any other juror rendered a biased decision as a result of their caring for an elderly person. Therefore, this claim was due to be dismissed because it failed to satisfy the requirements of Rule 32.3 and Rule 32.6(b), Ala. R.Crim. P., and it, failed to state a claim for which.relief could be granted. Hyde v. State, 950 So.2d at 344 (“Conclusions unsupported by specific facts will not satisfy the requirements of Rule 32.3 and. Rule 32.6(b).); Duncan v. State, 925 So.2d 245 (Ala.Crim.App.2005).
c. In paragraph 173 of the petition, Beckworth alleged:
“Trial counsel failed to expose those jurors who would automátically impose the death' penalty' following a murder conviction in ’ this case. ’ Though the judge asked the potential jurors whether they would automatically vote for death if the defendant. was. convicted, trial counsel neglected to obtain information from potential jurors that would have *558 revealed that they would vote automatically for death.”
(C. 50.)
In paragraph 174, Beckworth alleged that juror A.L. would have automatically voted for death, and that once A.L. decided that Beckworth was guilty, A.L. made up his mind that Beckworth deserved the death penalty. (C. 50.) In paragraph 175 of the petition, Beckworth also alleged, “Trial counsel failed to uncover prospective jurors who are unable to give meaningful consideration to mitigating evidence.” (C. 51.) He further alleged that jurors A.L. and T.W. refused to consider the testimony of Beckworth’s family members and would have recommended that Beckworth be punished by the death sentence regardless of that testimony.
As to the claims raised in paragraphs 173-175, Beckworth failed to satisfy the pleading requirements set forth in Rule 32. Beckworth failed to identify what additional questions counsel should have asked the veniremembers that would have revealed these alleged biases. Beckworth was required to specifically identify such questions because during its voir dire questioning, the trial court inquired whether anyone would be unable to recommend a sentence of life imprisonment without parole, and no veniremember responded. (Trial R. 23.) Beckworth was also required to specifically plead what additional, questions defense counsel should have asked because defense counsel, during their voir dire questioning, asked the veniremembers twice whether anyone would automatically recommend the death sentence if Beckworth was found guilty. (Trial R. 120-122.) No venire-member responded to either of those questions. Defense counsel’s second question was very specific; counsel asked:
“Is there anybody who feels, as we are sitting right now, that regardless of the kind of upbringing that Rex Beck-worth had, that despite how his parents were, that despite his intelligence level — despite all of those things — if he is found guilty of capital murder, that he should be put to death as you are sitting here right now? Does anybody feel that way? Because if you do, that is your opinion, and that’s great. Does anybody feel that way?”
(Trial R. 122.), .
In light of the questions that were asked of the veniremembers by the trial court and by defense counsel about automatically recommending a death sentence in disregard of evidence offered in mitigation, Beckworth’s failure to identify in the petition any-additional questions that, he alleged, counsel should have asked to reveal such a bias was a critical failure of pleading. Furthermore, Beckworth failed ' to plead any allegations of prejudice, as he was required by Rule 32.3 and Rule 32.6(b), Ala. R.Crim. P., to do. Because Beckworth failed to satisfy the pleading requirements, the trial court correctly dismissed these claims of ineffective assistance of counsel.[9]
*559 For the foregoing reasons, we hold that the trial court did not abuse its discretion when it dismissed Beckworth’s claims that trial counsel were ineffective for failing to conduct an adequate voir dire examination.
8. Failure to impeach-State’s witnesses
Beckworth argues that the trial court erred when it dismissed his claim that trial counsel had failed to adequately investigate ■ ways to impeach the State’s witnesses, and that their failure caused the jury to be deprived of information necessary to. evaluate the credibility of the, witnesses. Beckworth raised this claim in paragraphs 165-166. and 195 of the petition. The trial court correctly dismissed this claim because it failed to satisfy the pleading requirements set forth in Rule 32.
In the petition, Beckworth set forth only general allegations of deficient performance and prejudice. For example, he alleged that counsel- failed to investigate “ways to impeach the State’s forensic or ballistics experts.” (C. 48.) Beckworth did not provide the names of any of the experts he says counsel should have impeached; he did not include any specific facts regarding the information counsel could have discovered that would have impeached the experts; he did not provide any specific facts in an effort to allege that any impeachment of the witnesses would have resulted in a different outcome at his trial.
Also in paragraph 165 , of the petition, Beckworth alleged that counsel “also failed to investigate ways to impeach witnesses such as [Jackie] Stanton, [Chris] Hood, [Mark] Peacock and [Angie] Russell who made damaging circumstantial allegations against Mr. Beckworth. These witnesses’ shady backgrounds provided substantial information that could have been used to impeach them .” (C. 46.) Beckworth again failed to provide any specific factual allegations to support this portion of the claim. Beckworth did not include information about the witnesses’ trial testimony, did not identify even one area of inquiry that would have yielded admissible evidence that- would have impeached any of the witnesses, and did not provide any specific allegations of prejudice. General allegations such as that witnesses had “shady” backgrounds and bare conclusions do not satisfy the pleading requirements in Rule 32.3 and Rule 32.6(b). Hodges v. State, 147 So.3d 916 .(Ala.Crim.App.2007).[10] Because Beckworth failed to plead with specificity either the deficient-performance prong or the prejudice prong of the allegations of ineffective assistance of counsel, this claim was due to be dismissed.
9. Impeachment and cross-examination of State’s mtnesses
Beckworth argues that the trial court' erred when it 'dismissed the claim that trial counsel did not adequately impeach and cross-examine some of the State’s witnesses. None of the allegations in 'Beckworth’s petition were pleaded with sufficient specificity, and the claim was due to be dismissed. '
In paragraph 198 of the petition, Beck-worth alleged that trial counsel’s performance was deficient because “they never ascertained whether Jackie Stanton, Chris Hood, Mark Peacock, or Angie Russell had been -offered consideration by the prosecution for their.testimony,” so they could not impeach the witnesses on this point. (O. *560 58-59.) In paragraphs 199-201, Beck-worth presented additional allegations regarding Stanton, • Hood, and Russell. Beckworth did not present any additional allegations regarding Peacock.
Beckworth failed to satisfy the pleading requirements set forth in Rule 82.8 and Rule 32.6(b). Nor example, in paragraph 198 of the petition, Beckworth alleged that counsel never ascertained whether the witnesses had befen offered consideration by the prosecution, but he does not allege that the witnesses were,'in fact, offered consid-ération by the prosecution. Because Beck-worth did not allege that the witnesses received' some sort of consideration for their testimony — and, in fact, the witnesses’ testimony discloses otherwise — and that counsel could have discovered this evidence and that it would have changed the result, this claim wa’s' due to be dismissed.
In paragraph 199, Beckworth again alleged that counsel failed to discover if Russell had reached a plea agreement with the State. In order to plead this claim sufficiently, Beckworth would have had to allege that an agreement had been reached, that counsel failed to discover that information and impeach Russell at trial, and that, if counsel had done so, the result of the trial would have been different. In this paragraph of the petition, Beckworth also alleged that counsel failed to confront Russell because Beckworth’s codefendant, Walker, was her brother, and he alleged that counsel failed to cross-examine her on her inconsistent identification of the type of gun she had seen in the trunk of Beckworth’s car following the murder. The prosecutor elicited this information from Russell during' his direct examination, so the information was already before the jury. (Trial R. 589, 594-95.) Beckworth failed to allege any specific facts indicating that any additional information could have been elicited from Russell, and he failed to.identify-any questions defense counsel should have asked to elicit the additional information. Finally, Beck-worth failed to allege that, but for counsel’s failure to elicit additional information irom Russell, the outcome of his proceeding would have been different. Therefore, .this claim was due to be dismissed because it failed to state a claim for relief and because it failed to satisfy-the pleading requirements .of Rule 32. : ■
■ In paragraph 200 of the petition, Beck-worth alleged that counsel “failed tó make available objections” to Jackie Stanton’s testimony and did not cross-examine him “despite the susceptibility of his testimony to disparagement.” (C. 59.) This allegation was properly dismissed because‘it contains only vague, conclusory assertions unsupported ■ by any factual allegations, and it failed to satisfy the requirement that-the petitioner state a full factual basis for each claim. See, e.g., Hodges v. State, 147 So.3d 916, 948 (Ala.Crim.App.2007).
In paragraph 201 of the petition, Beck-worth alleged 'that trial counsel’s performance was deficient because they failed to interview Eric 'Metcalf who, Beckworth alleged, would have refuted the trial testimony of Chris Hood. Hood testified at trial that sometime before !the murder, Beck-worth had asked him if he knew where to find an untraceable gun because his wife was going to be driving a truck and they needed the weapon while they were on the road. Hood also testified that Beckworth had told him that the easiest way to kill a per son. was by an execution-style gunshot wound. Beckworth alleged in the petition that Metcalf was a friend of Hood’s and that he would have testified that he was present at this meeting with Beckworth and Hood, that Hood was “high” on drugs during that meeting, and that Beckworth did not ask about a gun or make a state *561 ment * about execution-style shooting. Hood contacted law-enforcement authorities after he heard about the murder in this case.
Although Beckworth provided some factual 'allegations in support of this claim,-he failed to allege in the petition any facts indicating how Metcalfs testimony would have been admissible at trial.' Hood’s testimony at trial indicated that he socialized with Beckworth on more than one occasion, but there is nothing in the record indicating the dates on which Beckworth allegedly asked about a gun and made the statement about execution-style shootings. Because the petition fails to allege facts indicating that Metcalf was present every time Hood was with Beckworth, or that Metcalf was with Beckworth. and Hood on the occasions when Hood alleged that the conversations occurred, then Beckworth has failed to plead allegations that, if true, would entitle him to relief. Therefore, Beckworth failed to state a claim upon which relief could be granted, and he failed to meet the specificity requirements in Rule 32. Therefore, the trial court did not err when it dismissed this claim.
For the foregoing reasons, the pléading deficiencies in the petition warranted dismissal of each of the claims regarding counsel’s alleged failure to impeach and cross-examine the State’s witnesses. Beckworth is not entitled to relief on this claim of error.
10. Failure to object to prosecutor’s arguments
Beckworth argues that the trial court erred when it- dismissed the claim that defense - counsel were ineffective for failing to object to the “prejudicial and inflammatory comments” the prosecutor made during the guilt phase of the trial. (C. 58.) Beckworth alleged in the petition that the prosecutor made statements for which there was no evidentiary support, and he cites to comments the prosecutor made:that characterized Beckvrorth- as one of the men who brought death-- and-destruction to the victim and who inflicted pain on the victim for their sheer enjoyment, The allegations. Beckworth raised were due to be dismissed- because they failed to, state a claim.••
“This court has stated that ‘[i]n reviewing allegedly improper prosecutorial comments, conduct, and questioning of witnesses, the task of this Court is to consider their impact in the context of the particular trial, and not to view the allegedly improper acts in the abstract.’ Bankhead v. State, 585 So.2d 97, 106 (Ala.Crim.App.1989), remanded on other grounds, 585 So.2d 112 (Ala.1991), aff'd on return to remand, 625 So.2d 1141 (Ala.Crim.App.1992), rev’d on other grounds, 625 So.2d 1146 (Ala.1993). See also Henderson v. State, 583 So.2d 276, 304 (Ala.Crim.App.1990), aff'd, 583 So.2d 305 (Ala.1991) (1992). ‘In judging a prosecutor’s closing argument, the standard is whether the argument “so infected the trial with unfairness as to make the resulting conviction a denial of due process.” ’ Bankhead, 585 So.2d at 107, quoting Darden v. Wainwright, 477 U.S. 168, 181 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637 (1974)). ‘A prosecutor's statement must be viewed in the context of all of the evidence presented and in the context of the complete closing arguments to the jury.’ Roberts v. State, 735 So.2d 1244, 1253 (Ala.Crim.App.1997), aff'd, 735 So.2d 1270 (Ala.1999). Moreover, ‘statements ■of. counsel in .argument to the jury-must be viewed as delivered in the heat of debate; such statements are usually valued by the jury at their true worth and are not expected to become factors in *562 the formation of the verdict.’ Bankhead, 585 So.2d at 106.”
Ferguson v. State, 814 So.2d 925, 945-46 (Ala.Crim.App.2000), aff'd, 814 So.2d 970 (Ala.2001). - ■
We have reviewed the prosecutor’s statement in the context of all the evidence presented and in the context of the prosecutor’s complete argument to the jury, and we have determined that they constituted characterizations of the crime and the defendant, based on the prosecutor’s reasonable inferences from, the evidence. None of the prosecutor’s comments challenged in Beckworth’s petition so infected the trial with unfairness that he would be entitled to a new trial. See Darden v. Wainwright, 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986). This is particularly true because the trial court instructed the jurors that they were the judges of the evidence, that their verdict was not to be based on the attorneys’ arguments, and that, if the attorneys’ perception of the evidence differed from the jurors’ perception of the evidence, the jurors were to “go by what [they] heard.” (Trial R. 755-56.)
Because the substantive argument underlying this claim — that the prosecutor’s statements constituted reversible error — is meritless, summary dismissal of the claim was proper. Rule 32.7(d), Ala. R.Crim. P.
11. Failure to call witnesses
Beckworth alleged in paragraph 206 of the petition: “Counsel called no witnesses at the guilt/innocence phase of trial. This was not a reasonable defense strategy in- response to the prosecution’s evidence. Any' competent' defense attorney would have realized that such a strategy-guaranteed Mr. Beckworth’s conviction of capital murder.” (C. 61.) This claim was “so conclusory and/or vague that Jit] plainly failed to satisfy the -pleading requirements of Rule 32.3 and Rule 32.6(b).” Hodges v. State, 147 So.3d 916, 935 (Ala. Crim.App.2007). As we stated in Hodges: “Asserting bare conclusions of deficient performance and prejudice do not satisfy the pleading requirements.” Hodges v. State. Beckworth clearly failed to plead sufficient facts alleging either deficient performance or prejudice. Therefore, summary dismissal of the .claim was proper.
12. Cumulative error
In paragraph 178 of the petition, Beck-worth alleged that all of the failures set out in the petition, individually and cumulatively] constituted deficient performance by trial counsel. We have found no error in the specific instances of ineffective assistance of counsel alleged by Beckworth. We likewise find no cumulative error here. See Hyde v. State, 13 So.3d 997 (Ala.Crim.App.2007).

Conclusion

For all of the foregoing reasons, we hold that the trial court correctly dismissed the ineffective-assistance-of-counsel . claims Beckworth raised in parts I and II of his petition asserting ineffective assistance of counsel as to the guilt phase of his trial. The trial court’s judgment is due to be affirmed.
B. Penalty-phase Issues
Beckworth next argues that the trial court erred when it dismissed claims he raised regarding trial counsel’s performance at the penalty phase of his trial, specifically that trial counsel failed to investigate' and present “critical mitigation evidence.” (Beckworth’s brief, at p. 49.) Beckworth raised these claims in part III of his petition. (C. 61-70.) We examine separately the allegations-regarding counsel’s. claimed failure to investigate.
*563 1. Evidence of childhood abuse,, abandonment, and poverty
Beckworth argues, that the trial court erred when it dismissed several claims in the petition alleging that counsel had failed to investigate and present mitigating evidence about Beckworth’s childhood. Specifically, Beckworth alleged in paragraph 213 of his petition that trial counsel failed to investigate or to present any evidence that “Beckworth’s childhood was defined by pervasive physical and sexual abuse in the home (as described in paragraphs 31-43, 59-70).”' (C. 63.) In paragraph 214 of the petition, Beckworth alleged that “counsel failed to investigate or present evidence that Mr, Beckworth was emotionally and psychologically impacted by his mother’s abandonment of the family when he was 10 years old (as described in paragraphs 35-40).” (C. 64.) In paragraph 215 of the petition, Beck-worth alleged: “Trial counsel did not present evidence that Mr. Beckworth grew up in severe and crippling- poverty (as described in paragraphs 45-58).” (G. 64.) Although it appears that paragraph 211 of the petition was intended merely as a'portion of the introductory paragraphs to the claims quoted above, we note, out of an abundance of caution, that Beckworth alleged in that paragraph that trial counsel failed to “interview any of Mr. Beckworth’s family members who were available and easy to contact at the time of .trial.” All of the claims presented in this portion of the petition failed to satisfy the specificity and full-factual-pleading requirements of Rule 32.6(b), and they were properly summarily dismissed.
In Smith v. State, 71 So.3d at 23, this Court considered a similar claim regarding trial counsel’s alleged failure to investigate. This Court adopted the findings of the trial court, which stated:
“ ‘In Thomas v. State, 766 So.2d 860, 892 (Ala.Crim.App.1998), the Alabama Court of Criminal Appeals held that “claims of failure to investigate must show-with specificity what information would have been obtained with ■ investigation, and' whether, assuming the evidence is admissible, its admission would-have produced-a different result.” In Woods v. State, [957 So.2d 492 (Ala.Crim.App.2004)], the Alabama Court of Criminal Appeals reviewed the circuit court’s summary dismissal of Woods’s postconviction claim that his defense counsel were ineffective for failing to interview member of his family. The. Alabama Court of Criminal Appeals held that the circuit court’s holding that Woods’s allegation did hot meet the specificity and full factual pleading requirements of Rule 32.6(b) was correct and adopted the circuit court’s findings that “Woods fail[ed] to identify any family member by name, proffer what their testimony would have been at’trial, or argue why such testimony would'have caused a different result at the penalty phase or at sentencing.” Id.
“ ‘If the specificity and, factual pleading requirements of Rule 32.6(b) mean anything, ’ certainly they would require a postconviction petitioner, or his counsel, to identify.for a court reviéwing a Rulé 32 petition to name [sic] the witnesses a defense attorney should have interviewed and proffer what beneficial information the specific witnesses could have providéd at trial. Smith fails to identify in Part I.C(l) of his second amended petition a single member of his family by name or proffer to the Court with any specificity what they would have testified about at trial, The Court finds that the allegation in Part I.C(l) fails *564 to meet the specificity and full factual pleading requirements of Rule 32.6(b), Ala.R.Crim.P. See Coral v. State, [900 So.2d 1274 (Ala.Crim.App;2004) ] (holding that “[e]ach subcategory [of ineffective assistance of counsel] is an independent claim that must be sufficiently pleaded”). Therefore, this allegation is summarily dismissed.’
“(Supp.C.R, 391-93.) We agree with the circuit court. Smith failed to meet his burden of pleading in regard to this claim. Smith does hot plead the name of any specific family member who failed to testify or plead what their specific omitted testimony‘would hávé consisted of. Rule 32.6(b),;Ala.R.Crim.P.”
Smith v. State, 71 So.3d at 24.
Beckworth’s petition suffers from the same pleading deficiencies noted in Smith. Although Beckworth made numerous factual allegations about his upbringing, he never specified the name of any family member who would have testified at his trial to any of the allegations. For example, in paragraph 37 of the petition, Beck-worth alleged, “[Beckworth’s father’s] alcoholism became worse after his wife left. He mixed beer and whiskey with Valium. He was completely unrecognizable in this state. He would become so intoxicated he could not move. He would fall to the floor and lay there.” (C. 13.) Beckworth failed to allege what investigation trial counsel should reasonably have performed that would have revealed this information, and he failed to allege the name of the witness who would have testified to the information at Beckworth’s trial. We note that Beckworth alleged in the petition that, after his mother left the family, he “suppressed his memories and feelings” (C. 13), so presumably this information was not available through testimony from Beck-woith. We note, further,' that during ah August 15, 2002, pretrial hearing, the prosecutor stated that Beckworth’s fathér had been declared incompetent to stand trial on a pending criminal matter, and that the father wás to be sent to a mental institution. (August 15, 2002, hearing, R. 33.)
All of the allegations raised in this portion of >the petition suffer from this pleading deficiency and, therefore, all were due to be dismissed. To plead the-claims sufficiently, Beckworth was required to identify the names-of the -witnesses he alleged should have been interviewed, to plead with specificity what admissible information those witnesses would have provided, and to allege how the result of the proceedings would have been .affected by the additional testimony. Smith v. State, 71 So.3d at 19. Because Beckworth failed to meet the specificity and full factual pleading requirements of Rule 32.6(b), the claims were properly dismissed, and Beck-worth is not entitled to any relief.[11]
• ¡2. Evidence, of mental retardation
Beckworth argues that the trial court erred when it dismissed his claim alleging that trial counsel did not adequately present evidence that he is mentally retarded. In paragraph 216 of his petition, Beckworth presented a variety of allegations, including that counsel failed to present “adequate evidence” of his mental retardation and “failed to present true and *565 accurate test scores to the jury,” and that “counsel left unrebutted the prosecution’s assertion that Mr. Beckworth’s intellectual functioning was not in the mild range of mental retardation.” (C. 65.)[12]
Beckworth failed to meet the specificity and full factual pleading requirements of Rule 32.3 and Rule 32.6(b), Ala. R.Crim. P. Beckworth failed to plead any. facts to support his general and conclusory allegations of error. For example, Beckworth pleaded no facts indicating what “adequate evidence” of his mental retardation counsel failed to present or how that evidence would have resulted in a different outcome at trial; he pleaded no facts regarding what his “true and accurate test scores” were, how counsel could have discovered and presented that evidence, and how those facts would have changed the outcome of the trial. Because these deficiencies are present in each of the allegations in this claim, the claim was properly summarily dismissed. Beckworth is not entitled to any relief on this claim.
3. “Scapegoat” evidence
Beckworth next argues that the trial court erred when it summarily dismissed the claim that he was frequently used as a scapegoat for crimes committed by others. Beckworth raised this claim in paragraph 217 of the petition. The trial court did not err when it summarily dismissed this claim because it did not satisfy the specificity and' full factual pleading requirements of Rule 32.6(b), Ala. R.Crim. P., which states that “[t]he petition must-contain a clear and specific statement of the grounds upon which relief is sought, including full disclosure of the factual basis of those grounds.” Each allegation in this claim was merely - conclusory and was unsupported by any specific factual details to support, the assertions. ■ For example, Beckworth alleged that “[t]rial counsel did not present evidence that Mr. Beekworth’s father made Mr. Beckworth take blame for his [father’s] conduct in order, to escape punishment for .himself.” (.&. 66.) Beck-worth failed to allege the name of the person who could-have provided, this infor.mation to trial counsel; failed to provide factual details such as what conduct Beck-worth allegedly took the blame for, when this incident occurred, or how Beckworth was made to take, the blame for his father’s conduct; failed to, allege that this person — or any other person — could have and would have provided relevant and admissible testimony about this incident at trial; failed to allege how counsel could have discovered this information and, through what act of deficient performance they failed to do so; . and failed to allege any specific facts indicating how this testimony would have changed the outcpmé of the trial. All of the allegations in this claim fail,ed to include the full specific factual basis, and the claim was insufficiently pleaded.
We note that Beckworth incorporated by reference paragraphs 74-78, , 93-96,. and 113 of the petition into this claim, However, the paragraphs Beckworth referred to contained only nonspecific and-conclusory factual allegations, such as:
“On many occasions, Mr. Beckworth was manipulated by others or- took the blame for crimes committed by others. For example, Mr. -'Beckworth was *566 charged with auto theft. He had simply-gone for a ride with a friend. The friend driving the stolen car was a relative of the owner. . No charges were brought against the friend who actually stole the car.”
(C. 21.) As in all other- allegations in this petition, the conclusory factual allegations failed to identify the specific acts or omissions of counsel; failed to identify specific facts supporting the conclusory allegations, such as the date of any of the alleged incidents, identification of the parties involved, and any crimes for which Beck-worth had been wrongly convicted; failed to plead specific facts indicating how counsel could have, but failed to, discover this information; failed to identify the names of any witness who would have provided relevant, admissible testimony at trial about these incidents; and failed to identify specifically how he was prejudiced by counsel’s alleged deficient performance.
Beckworth failed to satisfy the pleading requirements of Rule 32.6(b) because he failed to present the full factual basis supporting any of the allegations of ineffective assistance of counsel raised in this claim. See, e.g., Boyd v. State, 913 So.2d 1113 (Ala.Crim.App.2003):
“Boyd’s claim does not provide a ‘clear and specific statement of the grounds upon which relief is sought, including full disclosure of the factual basis of those grounds.’ Rule 32.6(b), Ala. R.Crim. P. (Emphasis added.) With regard to this claim, no tangible fact tending to establish counsel’s allegedly inadequate performance was presented to the circuit court.. As the circuit court correctly found, Boyd’s petition does not disclose the ‘critical exculpatory evidence’ that should have been uncovered by his counsel; does not disclose ‘one specific piece of evidence that went undiscovered’ based on the allegedly defi■cient performance of counsel; does not disclose any reasons why Boyd’s arrest and pretrial detention were unlawful; does not disclose how counsel allegedly failed to adequately cross-examine witnesses or the information that was omitted as a. result of the allegedly inadequate cross-examination; and does not disclose what type of defense that counsel should have investigated or should have mounted. Thus, the circuit court correctly ruled that the claim had not been sufficiently pleaded.”
Boyd v. State, 913 So.2d at 1131-32 (footnote omitted).
Summary dismissal of this claim was proper, and Beckworth is not entitled to any relief.
4. Family history of mental retardation and mental illness
Beckworth argues that the trial court erred when it summarily dismissed the claim that counsel had rendered deficient performance when they failed to investigate and present evidence of Beck-worth’s family history of mental illness and mental retardation. This claim was raised in paragraph 218 of the petition, which incorporated by reference paragraphs 101-02 and 142 of the petition. The trial court did not err when it summarily dismissed this claim because it did not meet the specificity and full factual pleading requirements of Rule 32.3 and Rule 32.6(b).
First, Beckworth failed to allege any facts indicating why evidence about family members’ mental retardation and mental illness was relevant or that it would have been admissible at his trial. Although the United States Supreme Court held in Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), that a defendant convicted of capital murder must not be precluded from presenting a broad range of proposed mitigating evidence at *567 his- sentencing hearing, the Court limited the range to “any aspect of a defendant’s character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death.” 438 U.S. at 604. -Although Beck-worth alleged in paragraph 142 of his petition that “[s]ome forms of mental retardation are genetic” (C. 40), he failed to allege that the form of mental retardation from which he or his family members allegedly suffered was one of those genetic forms. Beckworth failed to make any factual allegations indicating the relevance of evidence of mental illness in his family. Therefore, Beckworth failed to allege any specific facts indicating that the evidence he says counsel should have discovered and presented was relevant or that it would have been admissible at trial.
Furthermore, Beckworth failed to allege specific facts regarding how trial counsel could have reasonably discovered this evidence and how, through their allegedly unreasonable actions, they failed to discover it. Beckworth also failed to identify the names of any witnesses who would have testified to this information at Beckworth’s trial. Finally, Beckworth failed to allege any specific facts indicating how presentation of the evidence would have changed the result at trial.
Some of the allegations in the petition were vague: “Trial counsel did not present evidence that many of Mr. Beckworth’s father’s brothers and sisters exhibit many indications of mental retardation and- mental illness.” (C. 66-67.); and. “[Trial counsel] would have also discovered that several of Mr. Beckworth’s aunts and- uncles exhibit characteristics of mental retardation though they have never been diagnosed.” (C. 40.)' Beckworth’s failure to identify even the names of any of the relatives; the characteristics those relatives exhibited, and the names of any witnesses who would have provided relevant, admissible testimony in support of the allegations mandated dismissal of these allegations for failure to meet the, pleading requirements of Rule 32.2 and Rule 32.6(b). There was no factual basis for those allegations. See Boyd v. State, 913 So.2d 1113 (Ala.Crim.App.2003).
The pleading deficiencies set out above fully support the trial court’s summary dismissal of this claim..
5. Family members depended on Beck-worth
Beckworth argues that the trial court erred when it summarily dismissed the claim that trial counsel’s performance was ineffective because they failed to investigate or present evidence that Beck-worth’s family members depended on him for support and that Beckworth provided that support to them. Beckworth presented this claim in paragraph 219 of his petition, and he incorporates paragraphs 38, 70, and 93-95 of the petition.
Beckworth has failed to state a claim for relief as to this allegation of the petition. The evidence that, he says, counsel failed to discover and. .present was, in fact, presented at trial through the testimony of his ex-wifé, Carol Gobbel. (Trial R. 901-07, 923.) An allegation that is refuted by the record fails to state a claim and does not establish -that a material issue of fact or law exists as required by Rule 32.7(d). McNabb v. State, 991 So.2d 313 (Ala.Crim.App.2007); Duncan v. State, 925 So.2d 245 (Ala.Crim.App.2005). Because the underlying assertions on which Beekworth’s allegations are based is refuted by the record, Beckworth failed to state ■ a. claim upon which relief could be ■ granted. Summary *568 dismissal as to this claim was, therefore, proper. ■
6. Helping those in need
Beckworth next alleges that the trial court erred when it summarily dismissed the claim that Beckworth helped those in need and that he was protective of those who 'were vulnerable. This claim was presented in paragraph 220 of the petition, and it incorporated paragraphs 84-86 and 89-91 of the petition. Summary dismissal of this claim was proper because Beckworth failed to plead the claim with sufficient specificity.
This claim contains general, conclusory allegations such as, “Trial counsel failed to present evidence that Mr. Beckworth would, frequently go out of his way in order to assist the elderly and was once fired from’ a job for helping an elderly couple.” (C. 68.) In this allegation, and all the ■ others in this claim, Beckworth failed to provide a full factual basis.' Not only did Beckworth fail to provide details such as names and dates when Beckworth allegedly acted in defense of vulnerable people, he also failed to allege what reasonable investigation counsel' couíd have performed, but failed to perform, that would have led to the discovery of such facts. Moreover, Beckworth failed to allege the names of any witnesses who would ’ have been able to give relevant, admissible testimony on‘this matter at the sentencing hearing. Finally, Beckworth failed to provide specific facts indicating how presentation of this evidence would have led to a different result in the case.
For all of .the foregoing reasons, the trial court’s dismissal of this claim was proper. See, e.g., Hyde v. State, 950 So.2d 344 (Ala.Crim.App.2006).
7. Altegations that Beckworth’s father ■ sexually abused Beckworth’s daughter - ■
Beckworth argues that' the trial court erred when it summarily, dismissed his claim that trial counsel were ineffective for failing to present evidence that he was suffering from severe emotional and; psychological stress because Beckworth’s father had sexually abused Beckworth’s daughter not long before Beckworth’s trial. This claim was presented in paragraph 222 of the petition, and incorporated paragraphs 100-03, 107-08, and 116-17 of the petition. , The trial court did not err when it dismissed this claim because Beckworth failed to plead sufficient facts to support it.
Defense counsel were aware of allegations that Beckworth’s father had sexually abused Beckworth’s daughter, and counsel attempted to present that evidence at the penalty phase through the testimony of Beckworth’s ex-wife. The trial court sustained the prosecutor’s objection to questions about that alleged abuse on the ground that it was irrelevant. (Trial R. 902.) Beckworth argued on appéal that the trial court’s ruling was in error, but this Court affirmed the trial Court’s ruling, holding that the testimony had been properly excluded because it was irrelevant. Beckworth v. State, 946 So.2d at 507. Because defense counsel attempted to present the evidence that Beckworth argues defense counsel should have presented, the claim underlying this allegation of ineffective assistance of counsel' is baseless. An allegation that is refuted by the record fails to state a claim and does not establish that a material issue of fact or law exists as required by. Rule 32.7(d).. McNabb v. State, 991 So.2d 313 (Ala.Crim.App.2007); Duncan v. State, 925 So.2d 245 (Ala.Crim.App.2005). Beckworth alleged in the petition that trial counsel should have presented evidence that Beckworth’s daughter had been sexually abused, without presenting evidence that the alleged perpetrator was his father. This, portion of the claim was properly dismissed because Beck-worth’s. ex-wife was permitted to testify, *569 over the prosecutor’s objection, that their daughter had .been- sexually molested. (Trial R. 909.) Therefore, this portion of the petition failed to state a claim for relief and was due to be summarily dismissed. An allegation that is refuted by the record fails to state a claim and does not establish that a material issue of fact or law exists as required by Rule 32.7(d). McNabb v. State, 991 So.2d 313 (Ala.Crim.App.2007); Duncan v. State, 925 So.2d 245 (Ala.Crim.App.2005).
Beckworth alleged in the petition that trial counsel should have presented evidence that Beckworth had been “severely impacted” by his daughter’s sexual abuse. Beckworth failed to allege specific facts indicating how he was “impacted” by his daughter’s alleged sexual abuse; he failed to allege any specific acts or omissions of counsel related to the alleged failure to present this • evidence; and he failed to allege how any alleged impact was relevant as a mitigating circumstance' in the crime he committed against the 87-year-old victim. Alabama law provides:
“In addition to the mitigating circumstances specified in Section 13A-5-51, mitigating - circumstances shall include any aspect of a defendant’s character or record and any of the circumstances of the offense that the defendant offers as a basis for a sentence of life-imprisonment without parole instead of death, and any other relevant mitigating circumstance which the defendant offers as a basis for a sentence of life imprisonment without parole instead of death.”
§ 13A-5-52, Ala.Code 1975.
Because Beckworth failed to provide' a full factúal basis for this’ claim and pleaded only a general allegation that he was “impacted” by his daughter’s sexual abuse, he failed to plead facts indicating that the evidence would have been relevant or admissible as proposed' mitigation for this crime, and the claim was- insufficiently pleaded.[13] Furthermore, because Beck-worth failed to plead- any facts indicating the specific actions, or omissions of counsel related to this claim, this claim was insufficiently pleaded. For the foregoing reasons, this claim was due to be dismissed. See, e.g., Boyd v. State, 913 So.2d 1113 (Ala.Crim.App.2003).
8. Evidence that Beckworth was a good father
Beckworth alleges that the trial court erred when it dismissed' the 'claim that trial counsel were ineffective because they failed to rebut the prosecutor’s claim that Beckworth was a bad father for allowing the sexual abuse of his daughter. Specifically, Beckworth alleged that trial counsel should have presented testimony that Béckworth’s ex-wife left the child alone with Beckworth’s father. This claim was presented in paragraph 223 of the; petition. This claim was properly dismissed because it was insufficiently pleaded, failed to state a claim for which relief could be granted, and is rebutted by the record.
. Beckworth failed to allege any specific facts indicating what reasonable investigation counsel failed to perform that would have yielded relevant, admissible evidence. Beckworth also failed to plead any specific allegations of prejudice. Although these pleading deficiencies, alone, supported the trial court’s dismissal, the claim was als.o properly dismissed because. it failed to state a claim for- relief. Nothing in the record from the sentencing hearing indi *570 cates that the prosecutor argued or even implied that'Beckworth .was a bad father because he had allowed his father to sexually abuse his daughter. Moreover, at the sentencing hearing, trial counsel attempted to elicit testimony from Beckworth’s ex-wife regarding allegations that Beck-worth’s father was the person who had molested their daughter, but the trial court sustained the prosecutor’s objection on the ground that the testimony was irrelevant. (Trial R. -902.) Because the trial court refused to allow testimony about Beck-worth’s father’s alleged abuse of the child, it would have also- refused to allow testimony about Beckworth’s ex-wife leaving the child alone with Beckworth’s father before the alleged abuse. .Beckworth cannot reasonably argue that trial counsel’s performance was deficient for failing -fo present evidence about the circumstances leading up to the sexual abuse of, Beckworth’s daughter. Therefore, Beckworth failed to state a claim for relief, and the trial court properly dismissed the claim. Rule 32.7, Ala. R.Crim. P.
Finally, a review of the transcript of Beckworth’s sentencing hearing discloses that trial counsel presénted testimony from Beckworth’s ex-wife in an attempt to demonstrate that Beckworth was a good father. Beckworth’s ex-wife testified that she and Beckworth took their daughter to church, that Beckworth was a loving and Very attentive father, that Beckworth visited their daughter often after the divorce, and that the child was “crazy about her daddy.” (Trial R. 907, 909, 910, 915.) Because -the underlying allegation — that trial counsel failed to present evidence that Beckworth was a good father — is rebutted by the record, Beckworth’s claim of ineffective assistance based on that allegation, must fail. McNhbb v. State, 991 So.2d 313 (Ala.Crim.App.2007); Duncan v. State, 925 So.2d 245 (Ala.Crim.App.2005).
For all of the foregoing reasons, the trial court correctly dismissed this claim.

Conclusion

Having thoroughly reviewed each of the allegations that, Beckworth says, the trial court erroneously dismissed, we have concluded that the trial court did. not err. A majority of the claims failed to satisfy the specificity and full factual pleading requirements of Rule 32.3 añd Rule 32.6(b), Ala. R.Crim. P,, and the remaining claims were subject to dismissal because they failed to state a claim or were rebutted by the trial record or by this Court’s opinion on direct appeal. Each of the claims of ineffective assistance of counsel was properly dismissed, and Beckworth is not entitled to any relief on appeal.
IV. Conclusion
■ We affirm the tidal.court’s dismissal of the Brady claims, the claims regarding juror D;B., and all of the ineffective-assistance-of-counsel ■ claims. However, because the trial court erred- when it dismissed the claims regarding Juror A.L. raised in paragraphs 243,- 245, and 247 of Beckworth’s petition, this cause must be remanded for further proceedings, as specifically ■ outlined in Part II.B.l. of this opinion. The trial court must first determine- whether Beckworth ean establish that the - preclusive effects of Rule 32.2(a)(3) and (5) do not bar relief. Second, if the claims are not proeedurally barred, the-trial court shall provide Beck-worth with the opportunity to prove the allegations contained in those paragraphs and to establish that he is entitled to relief based on the standard that the juror’s misconduct might have prejudiced him, see Ex parte Dobyne, 805 So.2d 763 (Ala.2001).
The' trial .court shall take all necessary action to see that the circuit clerk makes due return to this Court at the earliest *571 possible time and within 90 days of the release of this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED 'WITH DIRECTIONS.*
WISE, P.J., and WINDOM and KELLUM, JJ., concur.

,. Beckworth alleged in paragraph 246 of. his petition that A.L. failed to disclose that he would automatically recommend a death-penalty verdict if Beckworth was found guilty. (C. 78.) However, in his brief to this Court Beckworth did not present any argument as to that portion of the juror-misconduct claim; therefore, we deem that argument abandoned. See Simmons v. State, 879 So.2d 1218, 1221 n. 1 (Ala.Crim.App.2003).

. In Part III of the petition, Beckworth presented allegations of ineffective assistance of counsel at the penalty phase of the trial. (C. . 61-70.) Those claims are addressed in Part . III.B. of this opinion.

. Beckworth’s allegations of deficient performance and prejudice and the facts underlying those allegations are scattered throughout the petition. "However, the claim of ineffective assistance of counsel is a general allegation that often consists of numerous specific subcategories. Each subcategory is a independent claim that must be sufficiently pleaded." Coral, 900 So.2d at 1284, overruled on other grounds, Ex parte Jenkins, 972 So.2d 159 (Ala.2005). Beckworth’s petition was not a •model of clarity, and many of the allegations of prejudice were made long after allegations of deficient performance, and not as part of the initial claim of deficient performance. Nonetheless, out of an abundance of caution and to the best of our ability, we have considered all the claims of ineffective assistance of counsel Beckworth raised in the petition, even when portions of the claims were pleaded in separate sections of the petition.

.,, "[TJhe Alabama Supreme Court, inExparte , Perkins, 851 So.2d 453 (Ala.2002), adopted ’ ' the most liberal definition of mental retardation as defined by those states that have legislation barring the execution of a mentally retarded individual. According to Perkins, to be considered mentally retarded a defendant must show: (1) significant subav-erage intellectual functioning- — i.e., an IQ of 70 or below; (2) significant or substantial deficits in adaptive behavior; and (3) that these problems manifested themselves during the developmental period — i.e., before the age of 18.” ' ' ‘
Smith v. State, [Ms. CR-97-1258,, Jan. 16, 2009] — So.3d -, -1— (Ala.Crim.App. 2000) (opinion on return to fourth remand).

. We note that this Court has not addressed the "Flynn effect,” see James R. Flynn, Tethering the Elephant: Capital Cases, IQ, and the Flynn Effect, 12 Psych., Pub. Poly, & L., 170-78 (2006), which posits that IQ scores increase over time in certain populations. However, the Texas Court of Criminal Appeals recently, stated: "We have previously Refrained from applying the Flynn effect, however, noting that it is an ■'unexamined scientific concept', that does not provide a. reliable basis for concluding that an appellant has significant sub-average general intellectual functioning.” Neal v. State, 256 S.W.3d 264, 273 (Tex.Crim.App.2008), citing Ex parte Blue, 230 S.W.3d 151, 166 (Tex.Crim.App.2007), citing, in turn, In re: Salazar, 443 F.3d 430, 433 (5th Cir.2006) ("This theory attributes the general rise, of I.Q. scores-of a population over time to the use of outdated testing procedures, emphasizing the need for the repeated renormalization of I.Q.-test standard deviations over time.”).

. Beckworth argues in his brief to this Court that trial counsel’s performance was deficient because, he says, they failed to challenge “obvious flaws” in his confession and that the State had introduced the confession into evidence through "patently perjured testimony." (Beckworth’s brief, at p. 36.) Beckworth ■ raised this claim in the motion for reconsideration and for leave to amend the petition. As we noted in Part .1 of this opinion, the trial court did not timely rule on this motion. Therefore, the allegations in the motion are not properly before this Court for consideration, and we will not address the substance of the claim.

. The trial record includes the transcripts of several pretrial hearings. Those hearings were separately paginated, so citation to a portion of the hearing includes the date the hearing was held, followed by the relevant page number of the transcript.

. Paragraphs 168-170 of the petition contain a discussion of the legal principles related to voir dire questioning and do not contain allegations of ineffective assistance of counsel. (C. 49.) .

. Iri his brief to this' Court, Beckworth does ■not argue that the trial court erred when it dismissed the claim raised in paragraph 176 of the petition, which alleged that counsel failed to ask questions in a way that would identify veniremembers who were biased against him because of their past work with law-enforcement agencies. Beckworth also does not argue error in the trial court's dismissal of the claim contained in paragraph 177 of the petition, that tried counsel "did hot sufficiently question jurors who knew witnesses during trial.” (C. 51.) Because Beckworth did not present argument in his brief as to these claims, they are deemed abandoned. Simmons v. State, 879 So.2d 1218, 1221 n. 1 (Ala.Crim.App.2003).

. In another part of his petition, Beckworth made additional allegations regarding counsel’s failure to impeach and cross-examine these witnesses. (C. 58-60.) Those allegations are addressed separately, in the following section of this opinion, along with other claims raised in that portion of the petition.

. In support of his argument on appeal, Beckworth relies in his brief on portions of the-petition, C. 11-14, 21-22, 28-30, in an attempt, to establish that these claims were sufficiently pleaded. ‘(Beckworth’s brief, at p. 50.) However, Beckworth did not incorporate those portions of the petition into the claims now under review, and it is well settled that "[a]n appellant cannot raise an issue on appeal from the denial of a Rule 32 petition which was not raised in the Rule. 32 petition.” Arrington v. State, 716 So.2d 237, 239 (Ala.Crim.App.1997).

. Beckworth presented similar allegations in earlier portions of the petition, and those allegations were addressed in Part III.A.2. of this ' Court’s opinion. Beckworth does not refer to the previous allegations in this claim; therefore, this claim is considered separately. See Coral v. State, 900 So.2d at 1283 (holding that ‘‘[e]ach subcategory [of ineffective assistance of counsel] is an independent claim that must be sufficiently pleaded”), overruled on other grounds, Ex parte Jenkins, 972 So.2d 159 (Ala.2005).

. We do not mean to imply that in order, for the mitigation to be considered, a capitál defendant must establish á causal connection between the evidence offered as mitigation and the crime or the aggravating circumstances. Williams v. Allen, 542 F.3d 1326, 1343-44 (11th Cir.2008).

 Note from the reporter of decisions: On June 18, 2010, on return to remand, the Court of Criminal Appeals affirmed, without opinion. On September 24, 2010, that court .denied rehearing, without opinion.